[No. B174260. Second Dist., Div. Four. Dec. 12, 2005.]

JERRY'S SHELL et al., Plaintiffs and Appellants, v.
EQUILON ENTERPRISES, LLC, et al., Defendants and Respondents.

**COUNSEL**

Bleau, Fox & Fong, Thomas P. Bleau and Nikki Fong for Plaintiffs and Appellants.

Fulbright & Jaworski, Richard R. Mainland and Dinh Ha for Defendants and Respondents.

**OPINION**

**CURRY, J.**—The underlying case was dismissed by the trial court as a sanction for repeated failure to respond to discovery and comply with discovery orders. Several months after terminating sanctions were issued, appellants sought to revive the litigation through a motion for relief from default or dismissal under Code of Civil Procedure section 473, subdivision (b) (section 473(b)). The court denied the motion. We conclude that dismissal was the result of an intentional strategic decision on the part of appellants' counsel, and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*Complaint*

Appellants Jerry's Shell and 21 others[1] brought suit against Equilon Enterprises, LLC, doing business as Shell Oil Products US (Equilon) and

[1] The other complainants were Sami Merhi (doing business as Del Amo Shell), Fouad Dagher, Edgardo Parungao (doing business as Gardy's Auto Care), Carlos Marquez, Guillermo Ramirez (doing business as Ramirez Shell Auto Service), Twin Oaks Corp., Ron Abel (doing business as Abel's Shell # 2), Kevork Sislian, Tinsal Enterprises, Inc., Sitara Management Corporation, HJF, Inc., Matt Kalfayan (doing business as Camarillo Shell), Nozar Sheibani

certain individuals.[2] The complaint essentially alleged that Equilon, a joint enterprise between Shell and Texaco, developed a plan to convert independent franchise dealers' stations into company-operated stations or put them in the hands of the individual defendants, who were said to be "favored" dealers. It was alleged that Equilon gave preferential treatment to the favored dealers and made it difficult or impossible for appellants to compete through various practices, including predatory pricing, delayed payment for credit card sales, and failure to make promised station repairs and improvements. Appellants sought relief under California's unfair business practices and franchise laws, and for breach of contract, intentional interference, and fraud.

In April 2003, a few months after the second amended complaint was filed, the court appointed a discovery referee. The charges and expenses of the referee were to be advanced by Equilon.

### Equilon's Discovery Requests

On December 6, 2002, Equilon served written discovery on appellants, including: (1) one set of 58 interrogatories directed to Jerry's Shell, Dagher, Parungao, Ramirez, Sislian, Tinsal Enterprises, Inc., Sitara Management Corporation, HJF, Inc., Kalfayan, Buczkowski, Bisharat Enterprises, Hani and Vivian Maksimous, Ibarra, Mina's Shell, and Coast Village, Inc.; (2) one set of 68 interrogatories directed to Abel and Merhi; (3) one set of 43 interrogatories directed to Fairview Shell Autocare, Inc.; (4) one set of 46 interrogatories directed to Marquez and Twin Oaks Corp.; (5) one set of 55 interrogatories directed at Sheibani; and (6) one set of 112 document requests directed to all appellants.[3]

The document requests asked for, among other things, documents relevant to: damages; the price the responding party paid Equilon for gasoline; and allegations in the complaint pertaining to agency, predatory pricing, and favored dealers. There were also requests for profit and loss statements, documents referencing profit margins, and documents relating to any attempt

---

(doing business as Camarillo Texaco), Al Buczkowski (doing business as Oakview Shell), Bisharat Enterprises (doing business as Mission Bay Shell), Hani and Vivian Maksimous (or Maksimus, doing business as Desert Shell), Faten Ibarra (along with Hani Maksimous doing business as Marketplace Shell), Mina's Shell, Fairview Shell Autocare, Inc. (doing business as Fairview Shell Autocare), and Coast Village, Inc.

[2] The individuals named as defendants were Peter Hong, Sam Anabi, Jay Rabadi, Maroon Boutros, Khalil Khoury, Jack Khangura, Robert Scrivner, Burke Albelda, and Dave Burrow. These individuals were dismissed in February 2004, and are no longer parties to this dispute.

[3] In addition, at approximately the same time, the individual defendants propounded numerous interrogatories directed at each appellant.

to sell a franchise. The interrogatories asked for, among other things, specific facts that supported the allegations of the complaint, such as the allegations that Equilon engaged in predatory pricing, delayed payment for credit card sales, and failed to make station repairs. The interrogatories also asked for identification of each appellant's marketing area, each service station located in that marketing area, and every date when every dealer paid lower or higher tank wagon prices.

### First Motion to Compel Responses

On February 12, 2003, counsel for Equilon wrote to counsel for appellants inquiring about responses which by that time were "long overdue." No reply was received.

On March 7, 2003, Equilon filed a motion to compel responses to both the interrogatories and requests for production of documents.[4] No written opposition to the motion was filed on behalf of appellants. However, appellants' counsel, Nikki Fong, took part in the telephonic hearing.

On May 8, 2003, the discovery referee granted the motion to compel and ordered appellants to serve responses to the interrogatories by June 3, 2003, to provide responses to the document requests by June 6, 2003, and to produce documents for inspection and copying by June 9, 2003. Under the order, the responses were to be "without objection." Appellants were also ordered to pay monetary sanctions in the amount of $1,483.20.

### Appellants' Responses and Second Motion to Compel

On June 5, 2003, Fong asked permission of Equilon's counsel to serve responses to interrogatories, which had been due on June 3, on June 6. On June 6, however, no responses were served.

A second motion to compel was filed by Equilon on June 27, 2003.[5] No written opposition was filed on behalf of appellants, and this time appellants' counsel did not appear at the hearing. The motion was granted by order dated July 30, 2003. Appellants were ordered to serve responses by August 29, 2003. The court warned that if "[appellants] do not comply with this Order,

---

[4] Three of the individual defendants joined in Equilon's motion to compel. The other individual defendants filed a separate motion to compel with respect to their separate sets of interrogatories.

[5] Again, it was joined by three of the individual defendants.

the Court will be inclined to grant terminating sanctions." An additional $2,000 in monetary sanctions was awarded.

Nine of the appellants served responses on July 24, 2003. The responses contained a general objection to providing information protected by the attorney-client privilege or work product doctrine. There was also an objection raised to an interrogatory that asked each appellant to define his, her, or its marketing area based on vagueness and ambiguousness. In addition, as to certain interrogatories, the responses stated that the answer would require the preparation of a compilation or summary from voluminous documents already produced and referred Equilon to those documents. Two or three interrogatories were unanswered. To the interrogatory seeking information on the responding party's competitors, a multipage list of business and governmental entities and their addresses was attached. Most of the entities listed were not service stations or competitors of service stations.

By letter dated August 25, 2003, counsel for Equilon protested to Fong that the nine responding parties had "raised general objections applicable to all responses and specific objections to certain Interrogatories"; that they had "failed to provide any response . . . to certain Interrogatories, and have provided incomplete responses to others"; that some of the responses were not "Plaintiff-specific" or "tailored to each individual Plaintiff"; and that the response to the interrogatory asking for identification of every competing service station "was clearly not made in good faith."[6] Equilon's counsel received no response.

*Motion for Terminating Sanctions*

In September 2003, Equilon filed a motion for terminating sanctions or issue sanctions against appellants Sislian, Dagher, Ramirez, Parungao, Tinsal Enterprises, Inc., Fairview Shell Autocare, Inc., Marquez, Abel, and Merhi—the parties who had responded to the interrogatories. The ground for this motion was that the responses provided by these parties were insufficient. In particular, Equilon pointed to the objections raised, the failure to answer certain interrogatories, incomplete responses, and responses that were "generic." The response to the interrogatory concerning competitors in particular was said to be in bad faith.

A separate motion for terminating sanctions was filed as to appellants Twin Oaks Corp., Sheibani, Jerry's Shell, Sitara Management Corporation, HJF,

---

[6] The letter also discussed the failure to respond to the individual defendants' discovery requests, and stated that Bisharat Enterprises and Twin Oaks Corp. had not responded to the request for production of documents.

Inc., Kalfayan, Buczkowski, Bisharat Enterprises, Hani and Vivian Maksimous, Ibarra, Mina's Shell, and Coast Village, Inc.[7] With respect to these parties, the basis for the motion was that they had not provided any responses.

On October 21, 2003, further responses were submitted by all appellants, except Twin Oaks Corp. Among other things, these responses attempted to clarify each party's competitors by highlighting certain businesses on the multipage list of entities. In addition, all but one of the interrogatories had been given a response.

On October 22, 2003, Equilon served notice to the court that no opposition to the motion for sanctions had been received from appellants, and informed the court that supplemental responses "which purport to address many (although by no means, all) of the deficiencies in the prior responses" had been served.

The court held a hearing on the motion for sanctions in both the underlying case and the companion case, *Hansen v. Equilon* (Dec. 12, 2005, B174261) (nonpub. opn.), on October 27, 2003. Fong attended the hearing. With respect to *Hansen*, the court stated its tentative view that terminating sanctions should be granted because "plaintiff's responses are inconsistent with deposition testimony of various plaintiffs. Based on this, [respondents] in good faith could not have provided responses to written interrogatories. Persistent refusal with an order of production is tantamount to admission. The disobedient party has no meritorious claim." Fong interjected that she did not realize the Hansen matter was on calendar for a motion for terminating sanctions. The court confirmed that the hearing was calendared for that day and that the tentative was the ruling. Fong replied: "Well, we didn't file an opposition. I don't know that I can argue anything."

The court then turned to the underlying case: "Jerry[']s Shell, pretty much on the same vein . . . . Court grants terminating sanctions. Persistent refusal to comply with an order . . . we haven't received any opposition, so terminating sanctions are granted." Fong stated: "The only issue is, Your Honor, is that responses were provided last week; but I know that—I'll have to bring some other sort of motion to get that set aside."

The court's written order granting terminating sanctions against appellants was dated October 27, 2003.

### Motion for Relief from Default

On January 7, 2004, appellants brought a motion for relief from the order granting terminating sanctions pursuant to section 473(b). Fong prepared a

---

[7] Separate motions for terminating sanctions were filed by the individual defendants.

declaration in which the following facts were set forth. She had been delegated by lead counsel, Thomas P. Bleau, the responsibility for conduct of the litigation, including preparing discovery responses. During an extended period in 2003, she experienced several medical problems, including: a severe drop in blood sugar due to diabetes causing her to be hospitalized on September 14; a case of food poisoning that led to dehydration on September 22; numerous trips to doctors during the period from September 16 to October 14, to stabilize her blood sugar; and complications arising from pregnancy during the latter part of the year. Consequently, she reduced her time in the office and delegated responsibility for the discovery during that time frame to another attorney, Gennady Lebedev.

On October 14, 2003, when Fong returned to work, she discovered that Lebedev had not finalized responses. She started to prepare them "assuming that Mr. Lebedev was still working on opposing any motions brought by Equilon . . . for sanctions." On October 23, 2003, she "discovered for the first time that no Opposition [to the motion for terminating sanctions] had been filed." Lebedev "admitted [to Fong] that he had not prepared an Opposition, but that he hoped that the provision of responses would make said Motion for Terminating Sanctions moot."

With respect to the list of competitors provided in response to an interrogatory, Fong stated that her law clerk was supposed to have highlighted the stations that each responding party believed was a competitor, but had mistakenly served unhighlighted copies of the multipage list of entities. In addition, neither she nor her clerk had realized that some of the interrogatories were unanswered or left blank in the earlier responses.[8]

Fong also attempted to explain why the motion for relief from default had been filed so long after the order imposing terminating sanctions had been issued. According to her declaration, "it was [her] intention to file this Motion [for relief] no more than two weeks after the October 27, 2003 hearing." She had, however, suffered further complications from the diabetes and pregnancy, and suffered a miscarriage in December 2003. Consequently, "[she] was unable to concentrate on work or any work-related matters through the month."

*Equilon's Opposition*

In opposition to the motion for relief, Equilon asked the court to take judicial notice of a declaration filed by Fong in another litigation in which her

---

[8] With respect to the failure to respond to the discovery requests from the individual defendants, she explained that every appellant except for Bisharat Enterprises and Sitara Management Corporation was supposed to have submitted a request for dismissal as to those defendants.

firm's client had suffered a default and relief had been sought under section 473(b). In it, Fong related a similar account of hospitalization due to drop in blood sugar levels and food poisoning, but provided different dates for those occurrences. For example, she stated that she collapsed in her office on *July 31, 2003*, and was taken to an emergency room where she was diagnosed with dehydration due to food poisoning. Then she had to be given emergency medical treatment on *August 12, 2003,* when her blood sugar level dropped precipitously. She claimed to have been in the hospital on that occasion until August 25, 2003. From August 25 to September 14, she said she had "remained at home and did not conduct any business due to the extreme nausea associated with the prescriptions [she] was given to combat . . . damage to [her] kidneys." From September 23 to 27,[9] she "remained at home while [she] underwent monitoring for [her] kidney problems." On September 29, she learned she was pregnant and was readmitted to the hospital until October 24, and did not return to work until November 3.

Counsel for Equilon stated in a declaration, that, contrary to these representations of being hospitalized for lengthy periods in August, September, and October 2003, Fong had been present at the following court proceedings: (1) a mediation on August 8, 27, and September 3; (2) a telephonic discovery hearing on September 12; and (3) a status conference on August 18. In addition, counsel for Equilon stated that she had attended depositions and made telephonic contact with opposing counsel, as well as sending numerous e-mails, letters, and pleadings on 54 separate days during the period.

*Appellants' Reply*

In a supplemental declaration, Fong stated that, although she had been ordered to bed rest, she remained at home and worked from there on Equilon matters, including making telephone calls and sending letters, faxes, and e-mails.

*Order*

The court denied the motion for relief from default. The court noted at the hearing that although appellants failed to file an opposition to the motion for terminating sanctions, the mandatory relief provision was not applicable because appellants' counsel "appeared [and] did not oppose the termination hearing," and appellants were not, therefore, "deprived of an opportunity to address the issues." The court found that "for some reason, . . . tactical or whatever . . . , [counsel] chose not to oppose the terminating sanctions."

---

[9] The declaration actually states October 27, but that appears to be a typographical error.

Turning to the discretionary relief provision, the court stated: "[Appellants have] failed to show excusable neglect. The motion was not filed in a reasonable time. There's no basis for discretionary relief. [Appellants have] failed to satisfy the procedural requirements. [Appellants have] not met the burden of proof as [to] mistake, inadvertence, or surprise, and [have] repeatedly refused court orders and refused discovery and [have] never complied with the previous discovery motions."

In its written order, dated February 11, 2004, the court further stated that Fong's declaration "lacks credibility."

Notice of appeal was filed March 24, 2004.

## DISCUSSION

### I

■ Preliminarily, we must determine the scope of the appeal. Appellants' notice designated both the February 11, 2004, order denying relief under section 473(b) and the October 27, 2003, order granting terminating sanctions. Generally, a party who waits months to file a request for relief under section 473(b), as appellants did here, lose their right to appeal from the underlying order. For example, in *English v. IKON Business Solutions, Inc.* (2001) 94 Cal.App.4th 130 [114 Cal.Rptr.2d 93], appellant's February 9, 2001, notice of appeal purported to appeal from the judgment granted on August 3, 2000, and the order rejecting the motion for section 473(b) relief on January 12, 2001. (94 Cal.App.4th at p. 135.) The court pointed out that under the rules, " '[A] notice of appeal from a judgment shall be filed on or before the earliest of the following dates: (1) 60 days after the date of mailing by the clerk of the court of a document entitled "notice of entry" of judgment; (2) 60 days after the date of service of a document entitled "notice of entry" of judgment by any party upon the party filing the notice of appeal, or by the party filing the notice of appeal; or (3) 180 days after the date of entry of the judgment.' " (*Ibid.*, quoting former Cal. Rules of Court, rule 2(a).)[10] The time may be extended under rule 3(b) by the filing of a motion to

---

[10] After a recent amendment, the language of rule (2)(a) was changed and now provides: "a notice of appeal must be filed on or before the earliest of: [¶] (1) 60 days after the superior court clerk mails the party filing the notice of appeal a document entitled 'Notice of Entry' of judgment or a file-stamped copy of the judgment, showing the date either was mailed; [¶] (2) 60 days after the party filing the notice of appeal serves or is served by a party with a document entitled 'Notice of Entry' of judgment or a file-stamped copy of the judgment, accompanied by proof of service; or [¶] (3) 180 days after entry of judgment." The revisions have no impact on the holding in *English.*

vacate judgment under section 473(b). "However, 'in order to extend the jurisdictional time for filing a notice of appeal, the motion to vacate or set aside itself . . . must have been served and filed within either the normal time period for filing a notice of appeal under [California Rules of Court,] rule 2, or any shorter time period prescribed by applicable statute.' " (*English v. IKON Business Solutions, Inc., supra*, 94 Cal.App.4th at 135, quoting *In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 108–109 [95 Cal.Rptr.2d 113], italics omitted.) In the case before it, notice of entry had been served. Because appellant did not file her motion to vacate the judgment until two weeks after the 60-day deadline for filing a notice of appeal from the judgment, the time within which to appeal from the judgment itself was not extended.

Here, we have no indication that a notice of entry was served following the court's issuance of the October 27, 2003, order granting terminating sanctions. Accordingly, the deadline for filing a notice of appeal was 180 days after the date of entry of the order. The motion to vacate was filed within that period. There is, therefore, no timeliness problem with the notice of appeal as it relates to the October 27, 2003, sanction order.

There is, however, a waiver problem. In their opening brief, appellants state that the questions presented are "[w]hether the trial court erred in failing to grant [appellants] relief under [section] 473(b) when [appellants'] counsel submitted an affidavit attesting to her neglect and [appellants'] motion was filed within the six month statutory deadline" and "[w]hether there was sufficient evidence submitted by Equilon to establish that the dismissal entered in this case, from which [appellants] sought relief under [section] 473[(b)] was not the result of counsel's error and neglect." Neither of these issues relates to the October 27, 2003, order granting terminating sanctions. The brief contains a section heading entitled, "There Was No Basis For Granting Terminating Sanctions Against [Appellants] in this Action." However, the argument under this section rehashes the evidence of attorney fault and concludes by stating "[i]t was error for the trial court not to have applied the mandatory relief provisions of Section 473 . . . ." It, thus, appears that appellants have waived any challenge to the substance of the order granting terminating sanctions. (See *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [188 Cal.Rptr. 115, 655 P.2d 317].)[11]

---

[11] By the same token, appellants have waived any right to pursue an appeal from the court's decision under the discretionary portion of section 473(b) that appellants had not established excusable neglect. No argument appears in the brief on this point.

 Nor do we see any substantive basis for reversing the order granting terminating sanctions. Repeated failure to respond to discovery and to comply with court orders compelling discovery provides ample grounds for imposition of the ultimate sanction. (See, e.g., *Mileikowsky v. Tenet Healthsystem* (2005) 128 Cal.App.4th 262, 275 [26 Cal.Rptr.3d 831]; *Ruvalcaba v. Government Employees Ins. Co.* (1990) 222 Cal.App.3d 1579, 1581 [272 Cal.Rptr. 541].) Appellants here failed to respond to discovery requests propounded on December 6, 2002, until October 21, 2003. In the interim, two court orders were disregarded, including a July 2003 order warning that terminating sanctions would be the next step. Attempts by counsel for Equilon to "meet and confer" to discuss discovery deficiencies were also ignored. The court is not required to have infinite patience in these situations. A party who is unwilling to, or whose counsel is incapable of, performing the obligations of litigation with diligence should not be surprised when the right to proceed is lost.

## II

We now turn to the question of whether section 473(b) provides relief where counsel chooses not to respond to discovery in a timely fashion or to oppose a motion for terminating sanctions, and the case is dismissed.

 Section 473(b) has two parts. The first allows the trial court "upon any terms as may be just," to "relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or *excusable* neglect." (Italics added.) Whether or not to grant this type of relief is discretionary with the court. (*Solv-All v. Superior Court* (2005) 131 Cal.App.4th 1003, 1007 [32 Cal.Rptr.3d 202].)

The second part of section 473(b) provides: "Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." This is often referred to as the mandatory provision because it is said that "[w]here there is an attorney's affidavit of fault, the relief is mandatory unless it is determined that the attorney was not actually

the cause . . . ." (*In re Marriage of Hock & Gordon-Hock* (2000) 80 Cal.App.4th 1438, 1442 [96 Cal.Rptr.2d 546]; accord, *Lorenz v. Commercial Acceptance Ins. Co.* (1995) 40 Cal.App.4th 981, 989 [47 Cal.Rptr.2d 362].)

As this court explained in *Yeap v. Leake* (1997) 60 Cal.App.4th 591 [70 Cal.Rptr.2d 680] (*Yeap*), in the original version, section 473(b)'s mandatory provision applied only to "defaults" or "default judgments." (60 Cal.App.4th at p. 600.) The words "or dismissal" were added to the provision in 1992 at the behest of the State Bar "to give parity to plaintiffs whose attorneys' neglect, surprise, or inadvertence caused them to lose the opportunity to pursue their cases." (*Id.* at p. 600.) The bar had persuaded the Legislature that it was " 'illogical and arbitrary to allow mandatory relief for defendants when a default judgment has been entered against them due to defense counsel's mistakes and to not provide comparable relief to plaintiffs whose cases are dismissed for the same reason.' " (*Ibid.*, quoting Assem. Com. on Judiciary, analysis of Assem. Bill No. 3296 (1991–1992 Reg. Sess.) as amended May 4, 1992, p. 2.)

We noted at that time that "because 'dismissal' is a much broader concept than 'default,' " courts find themselves "wrestl[ing] with the question of whether to apply section 473 to specific types of dismissals." (*Yeap, supra*, 60 Cal.App.4th at p. 600) We were clear in our view that "the amendment was not written to cover every situation where a dismissal occurs due to attorney misfeasance and section 473 relief is sought" and that "the provision should be applied only where the dismissal occurs under circumstances similar to a default." (*Id.* at p. 600.) We expressed our general concurrence with the court in *Peltier v. McCloud River R.R. Co.* (1995) 34 Cal.App.4th 1809, 1820–1821 [41 Cal.Rptr.2d 182], wherein it was said: "Under our reading of amended section 473, a plaintiff seeking relief is granted 'comparable' relief to that obtained by a defaulting defendant. Thus, a default judgment is entered when a defendant fails to appear, and, under section 473, relief is afforded where the failure to appear is the fault of counsel. Similarly, under our view of the statute, a dismissal may be entered where plaintiff fails to appear in opposition to a dismissal motion, and relief is afforded where that failure to appear is the fault of counsel. The relief afforded to a dismissed plaintiff by our reading of the statute is therefore comparable to the relief afforded a defaulting defendant."

In *Yeap,* we went on to hold, in a split decision, that plaintiff's counsel's failure to calendar an arbitration hearing combined with failure to request a trial de novo, resulting in a zero award, triggered the mandatory provision of

section 473(b). The majority concluded that the attorney's actions resulted in a type of dismissal that was "analogous to a default." (*Yeap, supra,* 60 Cal.App.4th at p. 601.) Our position was supported by the decision in *Avila v. Chua* (1997) 57 Cal.App.4th 860 [67 Cal.Rptr.2d 373], wherein the court held that the mandatory provision applied where dismissal was entered after the court struck plaintiff's late-filed opposition to defendant's motion for summary judgment and entered judgment for defendant. Justice Epstein in his dissent took a narrower view of the meaning of "dismissal" under the statute: "[I]n the context of pleadings and motions, a dismissal is the withdrawal of an application for judicial relief by the party seeking such relief, or the removal of the application by a court. . . . [¶] The dismissal provision was added to the mandatory portion of Code of Civil Procedure section 473 . . . to give plaintiffs the functional equivalent of the 'default' provision for defendants: a remedy when a case is dismissed for failure to file a charging pleading or an answer. . . . [¶] There was no dismissal in this case." (*Yeap, supra,* at pp. 603–604.) Justice Epstein agreed that the majority was supported by the rationale in *Avila v. Chua,* but believed that that case suffered from the same deficiency: "There was neither a default nor a dismissal [in *Avila*], and to read the mandatory provision of Code of Civil Procedure section 473 to apply whenever a party loses his or her day in court due to attorney error goes far beyond anything the Legislature has done." (*Yeap, supra,* at p. 605.)

Our decision in *Yeap* was followed in *In re Marriage of Hock & Gordon-Hock,* where the court held that failure to appear on the date scheduled for trial due to new counsel's unawareness of the trial date required the judgment entered to be vacated. (*In re Marriage of Hock & Gordon-Hock, supra,* 80 Cal.App.4th at p. 1446.)

More recently, however, Justice Epstein's reasoning has found favor with courts that have similarly concluded that an overly expansive interpretation of the term "dismissal" should be avoided. In *English v. IKON Business Solutions, Inc., supra,* 94 Cal.App.4th 130, for example, counsel for plaintiff failed to oppose a summary judgment motion on the substance, but based the opposition solely on the need to conduct further discovery. After judgment was entered for defendant, counsel filed a motion under section 473(b), stating in a declaration that he had " 'neglected to submit a substantive opposition' to the motion for summary judgment 'based on [his] mistaken belief that [he] only had to explain why [his] firm had not been dilatory in pursuing the case.' " (*English v. IKON Business Solutions, Inc., supra,* at p. 134.) On appeal from the denial of the motion for relief, the court

concluded that the terms "default" and "dismissal" should be construed in accordance with the dissent in *Yeap*: "Applying [principles of statutory construction] to the mandatory provision of section 473(b), we construe the word 'dismissal' as having a limited meaning similar to the term 'default judgment.' . . . As Justice Epstein explained in his dissenting opinion in *Yeap*: 'The purpose of the [1992] amendment was to give plaintiffs the functional equivalent to the "default" provision for defendants . . . .' ([*Yeap*], *supra*, 60 Cal.App.4th at p. 604 (dis. opn. of Epstein, J.).)" (*English v. IKON Business Solutions, Inc., supra,* at p. 145.) "Given the limited meaning of the word 'dismissal' as used in the mandatory provision of section 473(b), a summary judgment in favor of a defendant is not a 'dismissal.' A summary judgment is not 'the removal . . . by a court' 'of an application for judicial relief.' ([*Yeap*], *supra,* 60 Cal.App.4th at p. 603 (dis. opn. of Epstein, J.).) . . . [A] summary judgment in favor of a defendant does not constitute a removal of the plaintiff's application for judicial relief, but rather an adjudication of that application based on the undisputed facts before the court." (*Id.* at pp. 148–149.)

English was followed in *Prieto v. Loyola Marymount University* (2005) 132 Cal.App.4th 290 [33 Cal.Rptr.3d 639], where counsel for plaintiff failed to oppose a defense motion for summary judgment, and *Gotschall v. Daley* (2002) 96 Cal.App.4th 479 [116 Cal.Rptr.2d 882], where plaintiff's counsel failed to designate an expert witness on the issue of causation and a motion in limine to dismiss based on inability to establish this essential element of plaintiff's case was granted. The court in *Prieto* explained why it believed the holding in *English* led to a more just result: "Summary judgment was entered two and a half years ago, yet this case continues in litigation. One reason for the delay is that appellant's counsel did nothing for nearly six months after March 2003 because he thought that he could make a motion to be relieved from default within six months and, as long as he confessed his fault, he had an absolute 'right' to have that motion granted. Thus, rather than have the case resolved in March 2003 on its merits or, if summary judgment was denied, shortly thereafter following a trial, the parties, and the courts, are engaged in midyear 2005 in litigating the question of counsel's default in opposing the summary judgment motion in *early 2003*. Instead of a resolution on the merits in the year 2003, the case has been in litigation for over two additional years on an issue that has nothing to do with the substance of the case." (*Prieto v. Loyola Marymount University, supra,* at pp. 296–297, fn. omitted.)

Just like the court in *Prieto*, we are here addressing a tangential dispute in a case that should have gone to trial in 2003, and would have gone if

appellants' counsel had not engaged in obstructionist tactics. We need not resolve at this time, however, whether this means we should reconsider our holding in *Yeap*. We specifically stated in *Yeap*, that if an "intentional strategic decision" caused the default or dismissal to occur, section 473 relief was not available. (*Yeap, supra*, 60 Cal.App.4th at p. 601.) This court had previously recognized that rule by implication in *Metropolitan Service Corp. v. Casa de Palms, Ltd.* (1995) 31 Cal.App.4th 1481 [37 Cal.Rptr.2d 575], where an attorney who had failed to file an answer on behalf of his client stated in his motion for relief from default that he had been engaged in a matter that took all of his time. On appeal from denial of the motion, plaintiff argued that "the failure to answer the complaint was part of a scheme to hinder and delay plaintiff by abusing the judicial process." (*Id.* at p. 1488.) In rejecting this argument and reversing the denial of the motion, we stated: "If plaintiff means that defendants deliberately defaulted, with a premeditated plan to have the default set aside later, the hearing in the trial court does not suggest the court believed defendants acted in such a diabolical way." (*Ibid.*)[12]

The record here, on the other hand, suggests exactly that. The evidence before the trial court established that appellants' attorneys regularly failed to respond to discovery when it was due, without informing the other side or seeking an extension. Any and all attempts by opposing counsel to discuss or "meet and confer" were similarly ignored. This gave opposing counsel no choice but to go to the trouble and expense of preparing and filing a motion to compel. But even a formal motion did not engender a response. And while appellants' counsel did not oppose such motions, neither did they concede. Thus, the court was drawn into the conflict, wasting judicial resources and—in the case of an appointed referee—leading to further expense. Finally, when an order issued compelling responses, appellants' counsel defied that too, leading to a second go round of each of these wearying steps.

█ While calling this practice a "strategy" is perhaps too generous a term, there is no question that it resulted in the attorneys having considerable supplemental time to respond to discovery not available to practitioners who follow the rules, while generally risking nothing more severe than an order compelling responses that should have been provided months earlier or an issue sanction on a topic that might never have been proven at trial. When the

---

[12] See also *Avila v. Chua, supra*, 57 Cal.App.4th at page 869 (court similarly rejected the contention that a late-filed opposition to a motion for summary judgment "was the result of deliberate tactic, rather than counsel's 'mistake, inadvertence, surprise, or neglect' ").

ultimate sanction of dismissal inevitably reared its head, appellants' counsel's obvious plan was to claim attorney fault and revive the claims through a section 473(b) motion for relief.[13] If we were to hold that counsel's actions were subject to automatic, mandatory relief, we would be rewarding and encouraging this wholly improper conduct. A party cannot justly be permitted to seek relief under section 473(b) from sanctions imposed for deliberate failure to respond to discovery or oppose discovery motions.

The decision in *Solv-All v. Superior Court* is somewhat to the contrary. Counsel for defendants there failed to file an answer because he believed the parties were on the verge of settlement and a response was not expected. The court there held that the phrase " 'mistake, inadvertence, surprise, or neglect' " which is the statutory language that describes when section 473(b) relief is to be granted should be "broadly defined" and that something may be "*intentionally* 'neglected.' " (*Solv-All v. Superior Court, supra,* 131 Cal.App.4th at p. 1010.) As the court saw it: "From the client's point of view, it doesn't matter a whit whether the default was due to gross carelessness or bad strategy; either way, the client is the one stuck with the judgment resulting from the attorney's error. In both cases, it is the attorney's 'neglect' to carry out his duty to his client that causes the problem. In both cases, the client should be entitled to relief if the attorney admits that the inaction was his responsibility." (*Id.* at p. 1010.) We believe the situation in *Solv-All* is distinguishable because the attorney there *was* mistaken about whether plaintiff expected a response to the complaint given that settlement discussions were underway, even if his decision not to file an answer can be seen as deliberate or intentional. Appellants' counsel here can point to no such mistake about the need to respond to discovery or the need to oppose the motion for sanctions. To the extent the decision is not distinguishable, however, we respectfully disagree.

## DISPOSITION

The order denying the request for relief from default and the judgment are affirmed.

Hastings, J., concurred.

---

[13] In this regard, we note that immediately on hearing the court's decision to impose terminating sanctions, Fong stated: "I'll have to bring some other sort of motion to get that set aside."

**EPSTEIN, P. J.,** Concurring.—I concur in the opinion except for part II of the Discussion, as to which I concur in the result. I continue to believe that *Yeap v. Leake* (1997) 60 Cal.App.4th 591 [70 Cal.Rptr.2d 680] was wrongly decided with respect to its analysis of the breadth of the "mea culpa" provision of Code of Civil Procedure section 473, subdivision (b). (See *Yeap v. Leake, supra,* 60 Cal.App.4th at p. 602, and cases that have agreed with the dissenting opinion in that case: *English v. IKON Business Solutions, Inc.* (2001) 94 Cal.App.4th 130 [114 Cal.Rptr.2d 93]; *Prieto v. Loyola Marymount University* (2005) 132 Cal.App.4th 290 [33 Cal.Rptr.3d 639].) Certainly, the failure to comply with discovery orders, resulting in the ultimate sanction of dismissal, cannot be fitted within the rationale of that statute. I would simply say so. But I do agree that even if *Yeap v. Leake* were correct in its analysis, it would not aid the appellant in this case.