Filed 2/26/14  Watkins v. Environmental Service Professionals CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| LYLE WATKINS, | |
| Plaintiff and Respondent, | E055803 |
| v. | (Super.Ct.No. CIVDS1006713) |
| ENVIRONMENTAL SERVICE PROFESSIONALS, INC. et al., | O P I N I O N |
| Defendants and Appellants. | |

APPEAL from the Superior Court of San Bernardino County.  John M. Pacheco, Judge.  Affirmed.

Gurovich, Berk & Associates, Dmitry Gurovich; Victor Law Offices and Robert M. Victor for Defendants and Appellants.

Zohar Law Firm and Daniel Y. Zohar for Plaintiff and Respondent.

## I.  INTRODUCTION

The trial court issued terminating sanctions against defendants Environmental Service Professionals, Inc. (EVSP), its chief executive officer Edward I. Torres (Torres),

1

and its former attorney Robert M. Victor (Victor), striking their answer to the complaint and entering default judgments against them. (Code Civ. Proc., § 2023.030, subd. (d)(1), (4).)[1] The terminating sanctions were based on each defendant's failure to comply with two prior discovery orders to produce documents concerning plaintiff Lyle Watkins's claims for breach of contract, fraud, and conversion. Defendants appeal from the default judgment against each of them, arguing the terminating sanctions were excessive and an abuse of the court's discretion. We affirm the judgment.

## II.  BACKGROUND

We summarize the record in accordance with the applicable standard of review:  in the light most favorable to the order imposing terminating sanctions, drawing all inferences in favor of the order which the evidence reasonably supports. (*Stephen Slesinger, Inc. v. Walt Disney Co.* (2007) 155 Cal.App.4th 736, 741.)

A. *Watkins's Complaint for Breach of Contract, Fraud, and Conversion*

Watkins was a founding principal, director, and officer of EVSP, a publicly traded corporation, and served as a consultant for the company until June 30, 2009. Watkins held 9,000,000 shares of EVSP common stock and 500,000 warrants to purchase EVSP common stock. In February 2010, Watkins and EVSP entered into a "settlement agreement" requiring EVSP to purchase Watkins's shares and warrants for $397,000.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

The exchange of the stock for payment, or the "closing," was to occur no later than March 10, 2010. Torres signed the settlement agreement on behalf of EVSP.

On March 10, 2010, Victor, an attorney for EVSP, wrote a letter to Watkins indicating he had been asked to "facilitate and finalize" the settlement agreement. Victor's letter advised Watkins that EVSP was wiring the $397,000 settlement sum into Victor's attorney-client trust account and Victor would disburse the money to Watkins once Watkins transferred possession of his original stock certificates to Victor. Victor indicted he would not transfer the stock certificates to EVSP until the settlement funds were wired into Watkins's account.

Watkins delivered the stock certificates to Victor on March 10, 2010, but did not receive the $397,000 settlement sum. On April 1, 2010, Watkins sent an e-mail to Torres advising him that EVSP was in breach of the settlement agreement and demanding the immediate payment of the $397,000 sum, plus interest, or the return of the original share certificates. Watkins received neither. Further demand letters were also disregarded.

In May 2010, Watkins filed a complaint against EVSP for breach of the settlement agreement and against Torres, Victor, and EVSP for fraud and conversion. The fraud and conversion claims were based on defendants' alleged false statements and misrepresentations to Watkins that he would be paid $397,000 in exchange for his stock certificates and warrants no later than March 10, 2010. For his fraud and conversion claims, Watkins sought the $397,000 settlement sum, plus interest, plus punitive damages.

3

B. *The December 22, 2010, and March 21, 2011, Discovery Orders*

On August 31, 2010, Watkins served requests for production of documents, other written discovery, and deposition notices on each defendant. The documents were to be produced on October 4, 2010, at the office of Watkins's counsel. Among other things, the inspection demands sought complete lists of the names, addresses, and numbers of shares held by EVSP shareholders on three specific dates: on February 24, 2010, on March 10, 2010, and a "current" or most recently compiled list. The shareholder lists were to be "sufficient to comply" with a demand under Corporations Code section 1600.[2]

The inspection demands also sought documents concerning EVSP's ability to pay Watkins the $397,000 settlement sum, both around February 24, 2010, when the settlement agreement was signed, and on the March 10, 2010, closing date. Among other documents, the inspection demands sought documents "related to any efforts" by EVSP to ensure it would have adequate funds to pay Watkins $397,000 by March 10, 2010;

---

[2] Corporations Code section 1600, subdivision (a) provides that: "A shareholder or shareholders holding at least 5 percent in the aggregate of the outstanding voting shares of a corporation or who hold at least 1 percent of such voting shares and have filed a Schedule 14B with the United States Securities and Exchange Commission . . . shall have an absolute right to do either or both of the following: (1) inspect and copy the record of shareholders' names and addresses and shareholdings during usual business hours upon five business days' prior written demand upon the corporation, or (2) obtain from the transfer agent for the corporation, upon written demand and upon the tender of its usual charges for such a list . . . a list of the shareholders' names and addresses, who are entitled to vote for the election of directors, and their shareholdings, as of the most recent record date for which it has been compiled or as of a date specified by the shareholder subsequent to the date of demand. The list shall be made available on or before the later of five business days after the demand is received or the date specified therein as the date as of which the list is to be compiled. *A corporation shall have the responsibility to cause its transfer agent to comply with this subdivision.*" (Italics added.)

4

documents "demonstrating that EVSP ever intended to wire settlement funds of $397,000.00 into VICTOR's Attorney-Client Trust Account"; documents concerning what defendants planned to do with Watkins's shares after the settlement agreement was signed; and documents concerning what had been done with Watkins's original share certificates after Victor took possession of them.

Defendants served "blanket objections" to the requests but produced no documents by the October 4, 2010, date set for production. Following efforts to meet and confer with Victor, who was representing himself, Torres, and EVSP in the action, Watkins's counsel moved to compel production of the requested documents, for initial and further responses to other written discovery, and to compel the depositions of Torres and Victor.

Following December 22, 2010, hearings on the motions to compel, the court issued five separate discovery orders. As pertinent, defendants were ordered to produce the requested documents and other discovery, *without objection*, within 30 days, or no later than January 21, 2011. Victor and Torres were ordered to appear for depositions at 10:00 a.m. on February 2 and 3, 2011, "at a location to be disclosed by plaintiff." Defendants were ordered to pay Watkins $6,250 in sanctions, within 90 days, "for all motions."[3]

---

[3] The motions to compel are not in the record. Nor does the record contain a reporter's transcript of the December 22 hearings. The court's December 22, 2010, minute orders indicate that defendants did oppose at least one of the motions to compel, but defendants were represented by counsel at the December 22, 2010, hearings. Defendants elected to file an appellants' appendix in lieu of having a clerk's transcript prepared.

5

Defendants filed a joint answer to the complaint on February 3, 2011. Victor and Torres appeared for depositions on February 2 and 3, 2011, but no documents were produced before or at the time of the depositions. During Torres's deposition, Victor, who represented Torres and EVSP at the time, told counsel for Watkins that EVSP had "10 or 12 boxes" of responsive documents ready for inspection at EVSP's offices.

Torres testified: EVSP's shareholder lists were in the possession of its transfer agent; Torres had asked the transfer agent to send the requested lists to EVSP; EVSP had begun to destroy its shareholder lists within the previous 90 days; at Victor's direction, Torres refused to explain why the long-sought shareholder lists were not brought to the deposition; EVSP had many documents, including board resolutions, concerning its efforts to acquire a $200 million loan during early 2010; EVSP intended to use part of the loan proceeds to pay Watkins $397,000; EVSP did not receive the loan proceeds in time to pay Torres; Torres would never have signed the settlement agreement with Watkins had he known EVSP could not pay the $397,000 on time; and at no time during 2010 did EVSP have sufficient funds to pay Watkins $397,000.

Counsel for Watkins made further motions to compel. On March 21, 2011, the court ordered defendants to produce "*all responsive documents without objections within 5 days to plaintiff's counsel's office*," the retaking of the Torres and Victor depositions, at defendants' expense, and defendants' payment of an additional $2,496 in sanctions within 60 days. Defendants failed to produce any documents by the March 26, five-day

6

deadline.[4] They also failed to pay the $6,250 in sanctions imposed for Watkins' first round of discovery motions, within 90 days of December 22, 2010, or by March 22, 2011, as the court previously ordered.

On April 4, 2011, defendants produced 435 pages of documents. Of these, counsel for Watkins identified 17 e-mails and 10 letters as having anything to do with the $200 million loan Torres claimed would have provided funding for Watkins's shares. No shareholder lists were produced. On April 27, 2011, the court disqualified Victor as counsel for EVSP and Torres based on Victor's prior representation of Watkins and his resulting conflict of interest in representing EVSP and Torres against Watkins.

On June 7, 2011, defendants produced an electronic link to several hundred pages of additional documents, but they still did not produce the requested shareholder lists or documents concerning EVSP's ability to pay the $379,000 around the time the settlement agreement was signed. According to counsel for Watkins, the documents included hundreds of e-mails from 2006 and 2007, invoices for services provided to EVSP customers, and other documents having nothing whatsoever to do with EVSP's ability or defendants' intention to pay the $379,000 when the settlement agreement was signed.

C. *The Motion and Order for Terminating Sanctions*

On June 24, 2011, Watkins filed a motion for terminating sanctions against each defendant, striking their answer to the complaint and entering a judgment by default

---

[4] Appellants' appendix does not include copies of the motions to compel underlying the court's March 21, 2011, orders, or any opposition to those motions.

against each of them. (§ 2023.030, subd. (d)(1), (4).) Alternatively, Watkins sought detailed evidence and issue sanctions against each defendant. (§ 2023.030, subds. (b), (c).) Defendants opposed the motion.[5]

Defendants acknowledged that Watkins's claims for breach of contract, fraud, and conversion were based on the allegation that defendants had absconded with Watkins's shares and neither had the funds to pay the $397,000 when the settlement agreement was signed nor the expectation of having the funds by March 10, 2010. In opposition declarations, Torres and Victor asserted that they and EVSP had produced all documents responsive to Watkins's original request for production, even though they had not produced any shareholder lists comprised of the names, addresses, and shareholdings of all EVSP shareholders on February 24, 2010, March 10, 2010, or thereafter. Torres and Victor also claimed that they and EVSP had previously produced all documents concerning defendants' efforts to comply with the settlement agreement, including their efforts to obtain a loan or other funding to pay the $397,000 settlement sum by March 10, 2010, but they did not explain what responsive documents they had produced.

Regarding the shareholder lists, defendants asserted that, as a public company, EVSP did not maintain or control its stock ledger. Instead, EVSP's transfer agent had possession of the shareholder lists and, as a result, EVSP was unable to produce the lists. (But see Corp. Code, § 1600 ["A corporation shall have the responsibility to cause its

---

[5] At this point, EVSP and Torres were represented by new counsel, and Victor represented himself in the action.

transfer agent to comply" with the statute by providing, upon written demand by a qualified shareholder, a list of the names, addresses, and shareholdings of all of the corporation's shareholders].)

Defendants had instead produced "a comprehensive list of the outstanding shares" in EVSP at each month's end from January 31, 2010, through March 31, 2011, and documents showing the numbers of shares held by Torres on the same dates. Defendants argued these lists were sufficient to determine whether there had been any dilution of EVSP shares, and asserted "there is no . . . cause of action that could possibly relate to the identity of the shareholders" of EVSP, and such information was "wholly irrelevant" to Watkins's claims.[6]

At a July 20, 2011, hearing on the motion, Victor argued he was improperly being "lumped in" with Torres and EVSP; he had never had possession, custody, or control of any of the requested documents; there had never been a request for documents concerning any $200 million loan; and EVSP had produced "all documents relating to funding that [EVSP] was trying to get up until the time that the agreement should have been funded," or March 10, 2011.

Following the July 20, 2011, hearing, the court took the matter under submission and later ordered terminating sanctions against each defendant, striking their answer to

---

[6] Victor claimed Watkins did not hold sufficient shares to be entitled to a shareholders list under Corporations Code section 1600, but in their opposition papers defendants produced a list showing that Watkins's 9,000,000 shares comprised 10.36 percent of EVSP shares on February 24, 2010; 9.27 percent on March 10, 2010; and 3.15 percent on March 31, 2011.

9

the complaint and entering their defaults.  The court imposed an additional $11,360 in monetary sanctions against defendants, to be paid within 60 days, along with the $8,746 in previously-ordered sanctions.

D.  *The Default Judgment*

On November 16, 2011, the court entered a default judgment against each defendant on the fraud and conversion claims and against EVSP on the breach of contract claim.  EVSP was ordered to pay Watkins $1,824,758; Torres $1,325,639; and Victor $1,306,139; plus 10 percent postjudgment interest.[7]

## III.  DISCUSSION

A.  *Applicable Law and Standard of Review*

The Civil Discovery Act (§ 2016.010 et seq.) authorizes courts to impose a range of sanctions, including monetary, issue, evidence, terminating, and contempt sanctions, against a party for "misuse of the discovery process."  (§ 2023.030; see *Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 12.)  Misuses of the discovery process include:  (1) "[f]ailing to respond or to submit to an authorized method of discovery"; (2) "[m]aking, without substantial justification, an unmeritorious objection to discovery"; (3) "[m]aking an evasive response to discovery"; (4) "[d]isobeying a court

---

[7] Under the judgment, defendants are jointly and severally obligated to pay Watkins $1,156,648 in compensatory damages, $83,025.18 in prejudgment interest, $20,106 in court-ordered sanctions, and $7,860.59 in costs.  EVSP is individually obligated to pay $329,118.89 in attorney fees and $228,000 in punitive damages.  Torres and Victor are individually obligated to pay $58,000, and $38,500, respectively, in punitive damages.

10

order to provide discovery"; (5) "[m]aking or opposing, unsuccessfully and without substantial justification, a motion to compel or to limit discovery"; and (6) "[f]ailing to confer in person, by telephone, or by letter with an opposing party or attorney in a reasonable and good faith attempt to resolve informally any dispute concerning discovery . . . ." (§ 2023.010, subds. (d)-(i).)

Terminating sanctions may include orders striking a party's pleadings and rendering a judgment by default against the party. (§ 2023.030, subd. (d)(1), (4).) An order imposing terminating sanctions is reviewed on appeal for an abuse of discretion. (*Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 991.) This standard of review "affords considerable deference to the trial court, provided that the court acted in accordance with the governing rules of law . . . . A decision 'that transgresses the confines of the applicable principles of law is outside the scope of discretion' and is an abuse of discretion. [Citation.]" (*New Albertsons, Inc. v. Superior Court* (2008) 168 Cal.App.4th 1403, 1422.)

Courts have long observed that "[d]iscovery sanctions 'should be appropriate to the dereliction, and should not exceed that which is required to protect the interests of the party entitled to but denied discovery.' [Citations.]" (*Laguna Auto Body v. Farmers Ins. Exchange* (1991) 231 Cal.App.3d 481, 487.) Accordingly, a court is never justified in issuing terminating sanctions based solely on a party's failure to pay a monetary sanction, because monetary sanctions are enforceable through the execution of judgment laws. (*Newland v. Superior Court* (1995) 40 Cal.App.4th 608, 615.) Nor shall discovery

11

sanctions be imposed as "a punishment" for a party's misuse of the discovery process. (*Doppes v. Bentley Motors, Inc., supra,* 174 Cal.App.4th at p. 992.)

"The discovery statutes evince an incremental approach to discovery sanctions, starting with monetary sanctions and ending with the ultimate sanction of termination . . . . If a lesser sanction fails to curb misuse, a greater sanction is warranted: continuing misuses of the discovery process warrant incrementally harsher sanctions until the sanction is reached that will curb the abuse. 'A decision to order terminating sanctions should not be made lightly. But where a violation is willful, preceded by a history of abuse, and the evidence shows that less severe sanctions would not produce compliance with the discovery rules, the trial court is justified in imposing the ultimate sanction.' [Citation.]" (*Doppes v. Bentley Motors, Inc., supra,* 174 Cal.App.4th at p. 992, fn. omitted; *R.S. Creative, Inc. v. Creative Cotton, Ltd.* (1999) 75 Cal.App.4th 486, 496 ["[T]erminating sanctions are to be used sparingly, only when the trial court concludes that lesser sanctions would not bring about the compliance of the offending party."].)

B. *Analysis*

All three defendants claim the terminating sanctions were unwarranted and an abuse of the court's discretion because they produced all responsive documents in their possession, custody, and control. For his part, Victor argues there was no evidence he violated any discovery order, and he was improperly "lumped in" with EVSP and Torres in the order imposing the terminating sanctions. We reject these claims.

12

All three defendants misused the discovery process and refused to comply with two discovery orders. Their misuses of the discovery process began with their failure to produce documents in response to Watkins's August 2010 requests for production, their failure to respond to additional written discovery, and their failure to appear at noticed depositions. (§ 2023.010, subd. (d).) After the December 22, 2010, order compelling defendants' production of documents within 30 days, setting the depositions of Torres and Victor on February 2 and 3, 2011, and imposing monetary sanctions, defendants flaunted orders by refusing to produce the requested documents.

The depositions of Torres and Victor proceeded as scheduled on February 2 and 3, but without the requested documents, necessitating their continuance. Thus, on March 21, 2011, the court ordered defendants "to produce all responsive documents without objections within 5 days," ordered the depositions of Torres and Victor retaken at defendants' expense, and imposed additional monetary sanctions against defendants.

Despite the two discovery orders, defendants continually refused to produce the shareholder lists and additional documents concerning EVSP's ability and willingness to pay the $397,000 settlement sum. Thus, on this record, we find no abuse of discretion in the order imposing the terminating sanctions against all three defendants. A party's "[r]epeated failure to respond to discovery and to comply with court orders compelling discovery provides ample grounds for imposition of the ultimate sanction." (*Jerry's Shell v. Equilon Enterprises, LLC* (2005) 134 Cal.App.4th 1058, 1069.)

13

The record shows that all three defendants willingly refused to produce the shareholder lists despite the orders to do so and EVSP's authority to require its transfer agent to produce the lists. (Corp. Code, § 1600, subd. (a).) As the attorney representing EVSP through April 25, 2011, Victor was responsible for ensuring that EVSP produced the shareholder lists, but the record shows he willingly refused to do so. Likewise, Torres, as the chief executive officer for EVSP, plainly had authority to cause EVSP to produce the lists, but willingly refused to do so.

Instead, all three defendants steadfastly insisted that the court-ordered shareholder lists were "wholly irrelevant" to Watkins's claims—right up to the July 20, 2011, hearing on Watkins's motion for terminating sanctions. Torres also testified that EVSP had begun to destroy some of its shareholder lists within the previous 90 days, after Watkins filed his complaint for breach of contract, fraud, and conversion, and potentially after the court's December 22, 2010, order to produce the shareholder lists. This also indicated that defendants did not intend to produce the shareholder lists.

All three defendants also repeatedly refused to produce any documents concerning EVSP's ability and willingness to pay the $397,000 settlement sum by March 10, 2010, despite two court orders to produce such documents. In opposing the motion for terminating sanctions, defendants insisted they had produced "all" such documents, but the record indicates that virtually no such documents were ever produced. As the attorney who represented EVSP in negotiating the settlement agreement and as the person who took possession of Watkins's shares without paying for them, the court could have

14

reasonably concluded that Victor had possession of responsive documents he was not producing.

Finally, the shareholder lists and the documents concerning EVSP's ability and willingness to pay the $397,000 settlement sum were by no means irrelevant to Watkins's claims, as defendants insist. Watkins claimed all three defendants defrauded him of his 9,000,000 EVSP shares and his warrants to purchase 500,000 additional shares by taking possession of his share certificates without paying or intending to pay for them. Whether EVSP had sufficient funds or expected to have sufficient funds to pay the $397,000 sum by March 10, 2010, was plainly relevant to Watkins's fraud and conversion claims. Likewise, the requested shareholder lists, with the names, addresses, and number of shares held by EVSP shareholders, may have shown what defendants did with Watkins's shares after they took possession of them without paying for them, and may have led to the discovery of additional evidence that defendants never intended to pay for the shares.

In light of defendants' continual refusal to comply with the court's two orders to produce the relevant documents, the terminating sanctions were not excessive. As noted, when discovery violations are "willful, preceded by a history of abuse, and the evidence shows that less severe sanctions would not produce compliance with the discovery rules, the trial court is justified in imposing the ultimate sanction.' [Citation.]" (*Doppes v. Bentley Motors, Inc., supra,* 174 Cal.App.4th at p. 992, fn. omitted.) The court reasonably concluded that less drastic sanctions, including evidence and issues sanctions,

15

would have been insufficient to remedy defendants' chronic misuses of the discovery process.

## IV.  DISPOSITION

The judgment is affirmed.  Plaintiff shall recover his costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING_____

J.

We concur:

HOLLENHORST_____
   Acting P. J.

RICHLI_____
   J.

16