Filed 12/14/21  Broussalian v. Broussalian CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| STEVE BROUSSALIAN, | B311983 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19BBCV00671) |
| v. | |
| SUSAN ARZOUMANIAN-BROUSSALIAN et al., | |
| Defendants and Respondents. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, John J. Kralik, Judge.  Affirmed.

Heller & Edwards and Mark L. Edwards for Plaintiff and Appellant.

Shahen Hairapetian for Defendants and Respondents Susan Arzoumanian-Broussalian and Sarkis Allen Arzomanian.

_____

After the trial court sustained a demurrer to Steve Broussalian's second amended complaint without leave to amend and dismissed the case, Broussalian moved to vacate the dismissal pursuant to Code of Civil Procedure section 473, subdivision (b),[1] arguing his counsel had been mistaken when she informed the court nothing further could be alleged to cure the pleading's legal defect. The court denied the motion. Broussalian has appealed the denial of his motion to vacate but not the order dismissing his lawsuit. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Broussalian's Complaints and the Demurrer to the Second Amended Complaint*

Broussalian filed a verified complaint on July 30, 2019, a verified first amended complaint on January 6, 2020 and the operative verified second amended complaint on April 1, 2020. In his second amended complaint Broussalian alleged he; his sister, Susan Arzoumanian-Broussalian; and Susan's husband, Sarkis Allen Arzoumanian, on March 26, 2002 obtained title to certain property as joint tenants, and Broussalian, along with the siblings' mother, subsequently began residing at the property.

In 2012 Broussalian signed a deed that stated he quitclaimed his rights in the property to Susan and Sarkis as a gift. The quitclaim deed was recorded on May 29, 2012, concurrently with an instrument transferring Susan and Sarkis's rights in the property to the 2000 Sarkis Allen Arzoumanian and Susan Lydia Arzoumanian Revocable Trust (the Trust), of which Susan and Sarkis were cotrustees. Although the quitclaim deed was valid on its face, it was void or voidable, Broussalian alleged,

---

[1]     Statutory references are to this code.

because Susan and Sarkis exerted undue influence over Broussalian to have him sign it. Broussalian had signed the quitclaim deed without knowledge of its nature and effect on his ownership rights, which he discovered for the first time on August 4, 2015. He had also signed the deed in reliance on Sarkis's representations that his signature was necessary to stop harassment by members of the homeowners association and to prevent a lawsuit threatened against him by an association member; and, contrary to Sarkis's assurances, the harassment from the homeowners association members continued.

The second amended complaint alleged causes of action for undue influence, cancellation of deed, quiet title, intentional misrepresentation and declaratory relief. It attached exhibits and Broussalian's declaration in which he averred under penalty of perjury numerous supporting facts.

On June 3, 2020 Susan and Sarkis, as individuals and in their capacities as cotrustees of the Trust (collectively the Arzoumanians), demurred to the second amended complaint, as they had to Broussalian's prior complaints, on the ground each of his causes of action was time-barred. The Arzoumanians argued Broussalian's causes of action were subject to various limitations periods—such as four years from the 2012 date the quitclaim deed was signed or recorded or three years from the August 2015 date Broussalian discovered the deed's nature and effect on his ownership rights—all of which had expired before the July 30, 2019 date Broussalian filed his original complaint.

In opposing the demurrer Broussalian contended the statutes of limitations for all causes of action were tolled

pursuant to section 328 because he had a disability:[2]  As alleged in the second amended complaint, Broussalian suffered symptoms of "stress, headaches, anxiety, segmented sleep patterns, nightmares, panic attacks, emotional fatigue and withdrawal for much of his life," leading him to seek treatment from Dr. Silvio Del Castillo; Dr. Del Castillo began prescribing medication for the symptoms, which the doctor stated resulted from stress due to Broussalian's living situation and relations with family members; and Broussalian was also under the care of psychiatrist Dr. Dirk De Brito from 2014 to 2015.  Broussalian asserted, even if the court were to find insufficient evidence of a disability for tolling under the statute, it could still grant equitable tolling based on the Arzoumanians' undue influence.

In their reply brief the Arzoumanians argued none of Broussalian's symptoms showed lack of legal capacity to make decisions within the meaning of section 328 and Broussalian had avoided stating under penalty of perjury in his verified second amended complaint he lacked that capacity.  The Arzoumanians asserted the untimeliness of Broussalian's claims was also not cured by the equitable tolling doctrine, which only applied to toll the limitations period while the claimant pursued an alternative remedy.

---

[2]    Section 328 provides, "If a person entitled to commence an action for the recovery of real property . . . is, at the time title first descends or accrues, either under the age of majority or lacking legal capacity to make decisions, the time, not exceeding 20 years, during which the disability continues is not deemed a portion of the time in this chapter limited for the commencement of the action, . . . but the action may be commenced . . . within the period of five years after the disability shall cease."

4

On October 13, 2020 the trial court sustained the Arzoumanians' demurrer to the second amended complaint without leave to amend and dismissed the case. Among other reasons the court, observing the second amended complaint "still fails to squarely allege" Broussalian lacked the legal capacity to make decisions, found Broussalian had not sufficiently alleged or provided supporting exhibits showing he lacked that capacity. The court also explained Broussalian's counsel had conceded at the hearing on the demurrer she had "no further ability to amend the complaint to allege [Broussalian's] legal incapacity." It rejected Broussalian's equitable tolling argument in part because he had failed to cite authority showing the doctrine applied when a case involved undue influence.

2. *Broussalian's Motion To Vacate Dismissal*

On October 23, 2020 Broussalian moved to vacate the dismissal pursuant to section 473, subdivision (b), on the ground his counsel had mistakenly advised the court there were no additional facts that could be alleged to support Broussalian's legal incapacity.[3] Broussalian argued the court had authority to

_____

[3]     Broussalian also moved, pursuant to section 1008, subdivision (a), for reconsideration of the trial court's order sustaining the demurrer to the second amended complaint. As stated in its January 8, 2021 order, the trial court determined it lacked jurisdiction to hear Broussalian's motion for reconsideration and took the motion off calendar. Broussalian does not challenge that ruling. (See *Marshall v. Webster* (2020) 54 Cal.App.5th 275, 281 ["[i]t is settled law that a motion for reconsideration is ineffective if it is filed after entry of judgment"]; *APRI Ins. Co. v. Superior Court* (1999) 76 Cal.App.4th 176, 181-182 [trial court is without jurisdiction to grant reconsideration after judgment has been entered].)

grant relief on the basis of "excusable mistake, inadvertence, or neglect."[4]

As set forth in his motion and supported by his accompanying declaration, Broussalian had been diagnosed with attention deficit disorder ("ADD") as a child, a disorder which was later listed as "ADD/ADHD" on his recent medical records (a change of nomenclature rather than of diagnosis); Dr. Del Castillo, who had confirmed the diagnosis and continued treatment of his disorder, and Dr. De Brito had prescribed Adderall for his ADD/ADHD, a medication that he had taken from 2012 to 2016 when the Arzoumanians badgered him to stop taking the medication during an unannounced visit to the property; Dr. Del Castillo had periodically prescribed a higher than normal dosage to control his worsening symptoms; his ADD/ADHD symptoms were severe enough to be deemed a disability, resulting in Dr. Del Castillo referring him to two social workers; and in 2016 he applied for food stamps because he was unable to work in his condition. Broussalian attached as an exhibit to his declaration his medical records showing his diagnosis and the medication Dr. Del Castillo prescribed to treat it.

As explained in Broussalian's motion and the accompanying declaration of his attorney Kim Cameron, Cameron had failed to check with Broussalian before informing the court there were no additional allegations to be made regarding Broussalian's legal incapacity. Cameron had been unaware at the October 13, 2020 hearing on the Arzoumanians'

---

[4]     Capitalizations and bold typeface used in the motion to vacate have been omitted.

demurrer of Broussalian's ADD/ADHD diagnosis and the associated Adderall prescription. In prior conversations with Broussalian, Cameron had asked him for his diagnosis, he had given her the list of his symptoms, and she had not pressed him further. (In his declaration Broussalian stated he had believed the symptoms of his disorder were what the trial court had required.) When Cameron informed him on October 14, 2020 of the court's ruling sustaining the Arzoumanians' demurrer, Broussalian told her of both the diagnosis and the prescription.

On November 30, 2020 the Arzoumanians filed their opposition to Broussalian's motion. The Arzoumanians asserted Cameron's claimed mistake of failing to check with Broussalian before informing the court of the absence of additional allegations to support a showing of Broussalian's legal incapacity did not constitute excusable neglect and, even if it did, affixing the "ADD/ADHD" label to Broussalian's previously alleged symptoms did not change the fact he had failed to show his lack of legal capacity to make decisions. They also contended the motion should be denied because Broussalian had failed to submit a proposed third amended complaint with the motion, as required by the statute. Relying on Broussalian's allegation in the second amended complaint that in signing the quitclaim deed he had been "acting solely in self-preservation to prevent any further harassment [by] the [homeowners association]," the Arzoumanians further argued Broussalian's admission he had engaged in a deliberative process in signing the deed confirmed he did not lack the legal capacity to make decisions.[5]

_____

[5]     The Arzoumanians separately argued Broussalian's legal capacity to make decisions was shown by Broussalian's multiple other lawsuits during the relevant time period—including one in

On December 7, 2020 Broussalian filed his reply brief. In arguing the trial court should exercise its discretion to set aside the dismissal, Broussalian stated he did not dispute the Arzoumanians' assertion the mandatory provisions of section 473, subdivision (b), were inapplicable. He supported his brief with additional declarations, including one by Dr. Del Castillo, in which the doctor stated ADD/ADHD was recognized as a disability under the Americans with Disabilities Act of 1990; Broussalian, Dr. Del Castillo's patient since March 2010, had suffered from ADD/ADHD for most of his life and continued to present with the disorder; in addition to symptoms of ADD/ADHD, Broussalian had reported feelings of anxiety that the doctor attributed to Broussalian's family relationships; ADD/ADHD affected Broussalian's ability to focus on and complete tasks in a timely fashion; and Broussalian's "failure to complete the task of filing a lawsuit against his family members within a set time period [was] entirely in keeping with the effects of his disability." Dr. Del Castillo also described the time periods he prescribed Adderall for Broussalian and its effectiveness in controlling Broussalian's symptoms.

On December 18, 2020 the Arzoumanians filed a response, supported by several declarations, to Dr. Del Castillo's

_____

which Broussalian, while representing himself, successfully obtained a restraining order against an attorney—and Broussalian's status as a licensed real estate agent and a pharmacy technician. In support of that argument the Arzoumanians requested the trial court take judicial notice of copies of court records, as well as records of the California Department of Real Estate and California Department of Consumer Affairs, Board of Pharmacy—a request the trial court granted.

declaration. In addition to objecting to portions of the declaration, they observed Dr. Del Castillo failed to state Broussalian had lacked the legal capacity to make decisions when Broussalian signed the quitclaim deed.

On December 23, 2020 Broussalian filed a surreply brief, as well as the declaration of Dr. Kristen Switaj. Dr. Switaj averred she was a licensed psychologist; Broussalian had been her patient since November 20, 2020; common symptoms of ADD/ADHD included "difficulty following through on a task or thought (starting but not finishing it), forgetfulness, not great attention to detail, and being easily distracted, with scattered or racing thoughts"; Broussalian presented with "traditional symptoms of ADHD, including inattention, hyperactivity, and fidgeting"; and Broussalian was at the time still taking Adderall, as prescribed by Dr. Del Castillo, which helped limit any impact on Broussalian of his symptoms at his work.

The Arzoumanians on December 24, 2020 objected to Broussalian's surreply brief and Dr. Switaj's declaration. They argued, although the court on December 11, 2020 had permitted the Arzoumanians to respond to new material Broussalian had included for the first time in his reply brief, Broussalian, in contrast, had not sought any authorization to file any additional material, including any surreply papers, which should be stricken. They also contended Dr. Switaj's declaration failed to show Broussalian lacked the legal capacity to make decisions: Being "fidgety, inattentive, or hyperactive" was insufficient to toll the statute of limitations. To the contrary, Dr. Switaj's acknowledgment that Adderall, which Broussalian had admitted using from 2012-2016, helped limit Broussalian's symptoms at his work, indicated Broussalian did have the capacity to make

decisions during the period for which Broussalian sought tolling of the statute of limitations.

### 3. *The Trial Court's Order Denying the Motion To Vacate Dismissal*

After hearing argument and taking the matter under submission, the trial court on January 8, 2021 issued a 10-page order denying Broussalian's motion. The court found the statements in Cameron's declaration did not rise "to the level of attorney fault based on mistake, inadvertence, surprise, or neglect for mandatory relief, or mistake, inadvertence, surprise, or excusable neglect." Observing Cameron had "ample time" to communicate with Broussalian to determine whether he "truly suffered from a disability that caused him to lack legal capacity to make decisions pursuant to [section] 328," the court stated, "As a result of . . . Cameron's inability to truthfully allege in the complaint that [Broussalian] suffered from a disability that caused him to lack legal capacity to make decisions at the time the action accrued, there were three rounds of pleadings and thereby three rounds of demurrers and, thus, ample opportunity to amend the complaint."

The court pointed to the Arzoumanians' argument Dr. Del Castillo's declaration failed to provide sufficient facts to show Broussalian lacked the legal capacity to make decisions as required under section 328 and stated, even if it were to consider Dr. Switaj's declaration, there would be no effect on the court's ruling because that declaration failed to support any showing of Broussalian's lack of legal capacity pursuant to section 328.

The court concluded the additional information Broussalian presented to Cameron after the court had sustained the Arzoumanians' demurrer without leave to amend was "not

10

fundamentally different than the information that . . . Cameron already had." It continued, "Cameron's initial decision that this information was insufficient to find an incapacity tolling the statute of limitations was a correct one." Cameron's unwillingness to make an allegation that was "not reasonably backed by the evidence," the court explained, was not a mistake but "the proper way to proceed."

## DISCUSSION

### 1. *Governing Law and Standard of Review*

Section 473, subdivision (b), provides in part, "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect. Application for this relief shall be accompanied by a copy of the answer or other pleading proposed to be filed therein, otherwise the application shall not be granted." The application must also be made "within a reasonable time," not exceeding six months, after the judgment, dismissal, order or proceeding. (§ 473, subd. (b).)

A party seeking discretionary relief "'on the basis of mistake or inadvertence of counsel must demonstrate that such mistake, inadvertence, or general neglect was excusable because the negligence of the attorney is imputed to his client and may not be offered by the latter as a basis for relief.'" (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 258.) Neglect or mistake is excusable only if a reasonably prudent person under similar circumstances might have made the same error. (*Bettencourt v. Los Rios Community College Dist.* (1986) 42 Cal.3d 270, 276; accord, *Zamora*, at p. 258; *Huh v. Wang* (2007) 158 Cal.App.4th 1406, 1423; see *Solv-All v. Superior Court*

11

(2005) 131 Cal.App.4th 1003, 1007.)  "[T]he discretionary relief provision of section 473 only permits relief from attorney error 'fairly imputable to the client, i.e., mistakes anyone could have made'"; "'[c]onduct falling below the professional standard of care, such as failure to timely object or to properly advance an argument, is not . . . excusable.'" (*Zamora*, at p. 258.)

Section 473, subdivision (b), also provides for mandatory relief "[n]otwithstanding any other requirements of [the] section" to vacate a default judgment or dismissal "whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect . . . unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." (§ 473, subd. (b).)  If the statutory conditions are satisfied, the court must grant relief. (*Solv-All v. Superior Court*, *supra*, 131 Cal.App.4th at p. 1008; *Metropolitan Service Corp. v. Casa de Palms, Ltd.* (1995) 31 Cal.App.4th 1481, 1487.)

A party seeking relief under section 473, subdivision (b), bears the burden of proof.  (*In re Marriage of Kieturakis* (2006) 138 Cal.App.4th 56, 80.)  "'A ruling on a motion for discretionary relief under section 473 shall not be disturbed on appeal absent a clear showing of abuse.'" (*Zamora v. Clayborn Contracting Group, Inc.*, *supra*, 28 Cal.4th at p. 257.)  "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason." (*Strathvale Holdings v. E.B.H.* (2005) 126 Cal.App.4th 1241, 1249; accord, *Grados v. Shiau* (2021) 63 Cal.App.5th 1042, 1049.)

If a ruling turns on a disputed issue of fact, the trial court's express and implied factual determinations are not disturbed on appeal if supported by substantial evidence. (*Strathvale Holdings v. E.B.H.*, *supra*, 126 Cal.App.4th at p. 1250; see *Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632 ["[i]f the trial court's resolution of [a disputed] factual issue is supported by substantial evidence, it must be affirmed"]; see also *Zamora v. Clayborn Contracting Group, Inc.*, *supra,* 28 Cal.4th at p. 258 [""'where there is a substantial conflict in the facts stated, a determination of the controverted facts by the trial court will not be disturbed'""].) When, however, the court's order is based on a finding that the moving party failed to carry its burden of proof, the question for the reviewing court as to that finding is whether it is erroneous as a matter of law. (See *Juen v. Alain Pinel Realtors, Inc.* (2019) 32 Cal.App.5th 972, 978-979 ["'where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law'"]; *Almanor Lakeside Villas Owners Assn. v. Carson* (2016) 246 Cal.App.4th 761, 769 [same].) "'Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."'" (*Juen*, at p. 979.)

"[T]o the extent that the applicability of the mandatory relief provision does not turn on disputed facts, but rather, presents a pure question of law, it is subject to de novo review." (*Carmel, Ltd. v. Tavoussi* (2009) 175 Cal.App.4th 393, 399.)

13

### 2. *Broussalian Failed To Establish the Trial Court Abused Its Discretion in Denying Discretionary Relief*

Asserting the trial court abused its discretion in denying his motion to vacate dismissal under the discretionary relief provisions of section 473, subdivision (b), Broussalian contends he presented sufficient evidence of mistake or excusable neglect and substantially complied with section 473, subdivision (b)'s requirement that his motion be accompanied by the proposed pleading. Because he had been diligent in seeking relief and the Arzoumanians would not be prejudiced by the granting of relief, he argues, he only had to support his showing of excusable neglect or mistake with "very slight evidence." (See *Mink v. Superior Court* (1992) 2 Cal.App.4th 1338, 1343 ["[w]hen the moving party promptly seeks relief [under section 473, subdivision (b),] and there is no prejudice to the opposing party, very slight evidence is required to justify relief"]; see also *Austin v. Los Angeles Unified School Dist.* (2016) 244 Cal.App.4th 918, 932.)

Broussalian misapprehends the governing principles of appellate review. Because Broussalian had the burden of proof, the standard for reviewing the trial court's determination of the disputed factual issue relating to his attorney's excusable neglect or mistake is not whether the evidence was sufficient to support a finding of excusable neglect or mistake but, rather, whether the evidence compelled that finding as a matter of law, taking into consideration the "very slight evidence" standard of proof that applied in the trial court. (Cf. *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010.) Broussalian, however, failed to discuss the Arzoumanians' evidence and did not attempt to demonstrate the evidence in his favor was uncontradicted and unimpeached, as

14

required for us to reverse the trial court's finding that he had failed to carry his burden of proving Cameron's statement to the court constituted mistake or excusable neglect within the meaning of section 473, subdivision (b).  (See *Juen v. Alain Pinel Realtors, Inc.*, *supra*, 32 Cal.App.5th at pp. 978-979; see also *Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218 ["[a] party who challenges the sufficiency of the evidence to support a finding must set forth, discuss, and analyze all the evidence on that point, both favorable and unfavorable"].)

Moreover, Broussalian failed to show, as he must, that any error by the trial court was prejudicial.  (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800 [error justifies reversal in a civil action only if it is reasonably probable a different result would have been reached absent the error]; see Cal. Const., art. VI, § 13; Code Civ. Proc., § 475.)  In response to Broussalian's argument that Cameron should not have told the trial court at the October 13, 2020 hearing there were no additional facts to be alleged regarding Broussalian's legal incapacity without first checking with him, the trial court stated the additional information was "not fundamentally different" from what Cameron already had alleged—that is, the trial court found the additional factual allegations would not have made any difference in establishing Broussalian's legal incapacity to make decisions and, thus, in showing the statute of limitations should be tolled. Broussalian did not address that finding until his appellate reply brief.  Even if not forfeited (see, e.g., *Golden Door Properties, LLC v. Superior Court* (2020) 53 Cal.App.5th 733, 786 ["issues not addressed as error in a party's opening brief with legal analysis and citation to authority are forfeited"]), Broussalian's belated

15

argument failed to establish allowing a third amended complaint would not be futile. (See *Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 726 ["'[l]eave to amend should *not* be granted where . . . amendment would be futile'"].)

In his reply brief Broussalian posited that it was reasonable his disability, even while being treated with Adderall to manage the symptoms, "hindered him in pursuing this legal action within the statute of limitations period." Perhaps that is so; but, putting aside whether Broussalian's description of his mental state really differed from the accounts previously given, that explanation fails to satisfy section 328's requirement that, for tolling to apply, the litigant must "lack[ ] legal capacity to make decisions." This standard, which is also contained in section 372 governing appointment of a guardian ad litem, requires evidence the party, through mental disease or disorder or developmental disability, is unable to understand the nature of the relevant proceedings. (See *In re James F.* (2008) 42 Cal.4th 901, 910, 916; *In re Samuel A.* (2021) 69 Cal.App.5th 67, 78, 82, fn. 9.) Broussalian failed to show how the proposed amendments to his complaint would change the legal effect of the pleading. (See *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349 [the burden is on the plaintiff to show "in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading"]; *Ivanoff v. Bank of America, N.A.*, *supra*, 9 Cal.App.5th at p. 726 [same].) Absent such a showing, we necessarily conclude any error by the trial court in not vacating the dismissal and allowing Broussalian to file a third amended complaint was harmless.

As for Broussalian's further contention, also made for the first time in his reply brief, that a third amended complaint

might demonstrate his entitlement to equitable tolling, Broussalian fails to explain how the additional facts presented would change the legal effect of his operative pleading. Broussalian contends he contacted the California Department of Real Estate to pursue a remedy to restore his ownership rights— the basis for his claim to equitable tolling—but ceased that effort based in part on factors related to his disability. However, Broussalian had alleged in his second amended complaint that he had contacted the Department but the Arzoumanians, aware of his actions, had taken steps to prevent him from proceeding with the remedy. The Arzoumanians successfully demurred to the second amended complaint on the ground Broussalian's contact with the Department did not support equitable tolling. In his appellate briefing Broussalian provides no reasoned analysis to show how his ADD/ADHD diagnosis and Adderall prescription— the only facts Cameron identified in the motion to vacate as previously unknown to her—relate to the elements of equitable tolling or impact the applicability of the doctrine in this case. (See, e.g., *Saint Francis Memorial Hospital v. State Dept. of Public Health* (2020) 9 Cal.5th 710, 724-725 ["equitable tolling today applies when three 'elements' are present:  '[(1)] timely notice, and [(2)] lack of prejudice, to the defendant, and [(3)] reasonable and good faith conduct on the part of the plaintiff'"; "[t]hese requirements are designed to 'balanc[e] . . . the injustice to the plaintiff occasioned by the bar of his claim against the effect upon the important public interest or policy expressed by the [operative] limitations statute'"].)  In any event, Broussalian's failure to assert his argument concerning equitable tolling in the trial court in his section 473 motion, as well as his failure to raise it in his opening brief with legal analysis and

citation to authority, forfeited the issue. (See, e.g., *Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603.)

### 3. *Broussalian Is Not Entitled to Mandatory Relief*

Section 473, subdivision (b), provides for mandatory relief from a default judgment or dismissal caused by an attorney's mistake, inadvertence, surprise or neglect when a timely application for relief after entry of judgment is accompanied by an attorney's sworn affidavit attesting to his or fault. (See *Rodrigues v. Superior Court* (2005) 127 Cal.App.4th 1027, 1033 [under section 473, subdivision (b), "[r]elief is mandatory when a complying affidavit is filed, even if the attorney's neglect was inexcusable"].) As discussed, in the trial court Broussalian did not dispute the Arzoumanians' argument mandatory relief was not available under the circumstances of this case. Nonetheless, Broussalian contends on appeal the trial court erred in denying his motion to vacate under the mandatory provision of section 473, subdivision (b).

Even if we did not find forfeiture, Broussalian's reliance on the mandatory provision in section 473, subdivision (b), fails. In the opening pages of his motion to vacate, Broussalian correctly recognized, "Relief is mandatory only from those dismissals which are the 'procedural equivalent of a default.'" (See *Younessi v. Woolf* (2016) 244 Cal.App.4th 1137, 1148 ["the mandatory attorney-fault provision 'may be reconciled with the discretionary dismissal statutes . . . if limited to those dismissals which are the procedural equivalent of defaults—i.e., those which occur because the plaintiff's attorney has failed to oppose a dismissal motion'"]; *English v. IKON Business Solutions, Inc.* (2001) 94 Cal.App.4th 130, 145 ["we construe the word 'dismissal' as having a limited meaning similar to the term 'default judgment'"]; *Leader v.*

*Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 620 ["when the Legislature incorporated dismissals into section 473, subdivision (b) it intended to reach only those dismissals which occur through failure to oppose a dismissal motion—'the only dismissals which are procedurally equivalent to a default'"; the purpose of the amendment "'was simply "to put plaintiffs whose cases are dismissed for failing to respond to a dismissal motion on the same footing with defendants who are defaulted for failing to respond to an action"'"]; see also *The Urban Wildlands Group, Inc. v. City of Los Angeles* (2017) 10 Cal.App.5th 993, 998.)

Far from being deprived of his day in court, Broussalian responded on three separate occasions to demurrers arguing his complaint against the Arzoumanians was untimely. And the order of dismissal he challenged in his motion to vacate was not based on his lawyer's failure to respond, but on her candid response to the court's inquiry whether additional facts could be alleged as to Broussalian's legal incapacity that would justify permitting Broussalian to file a third amended complaint. If there were to be any relief under section 473, subdivision (b), for the lawyer's purportedly mistaken answer to that question, it had to be as a matter of discretion, not a matter of right.

## DISPOSITION

The order denying Broussalian's motion to vacate dismissal is affirmed. The Arzoumanians are to recover their costs on appeal.

PERLUSS, P. J.

We concur:

SEGAL, J.          FEUER, J.

19