[No. E037021. Fourth Dist., Div. Two. July 6, 2005.]

SOLV-ALL et al., Petitioners, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, Respondent;
SMS SUPERMARKET SERVICE, INC., Real Party in Interest.

**COUNSEL**

The Mellor Law Firm, Mark A. Mellor; Dunn Koes and Daniel J. Koes for Petitioners.

No appearance for Respondent.

Higgins Harris Sherman & Rohr, Demitra H. Tolbert and John J. Higgins for Real Party in Interest.

**OPINION**

**WARD, Acting P. J.**—This is an unremarkable action brought by real party SMS Supermarket Service, Inc. (SMS) against petitioner Solv-All and certain individuals for breach of contract and common counts.[1] After petitioners

---

[1] The individual defendants were Martha Garcia and Scott and Susan Marincek. Their role is factually unclear, although SMS briefly refers to them as Solv-All's "principles" [*sic*]. Although the motion for relief sometimes appears to include the Marinceks, relief is only expressly sought as to Solv-All and Martha Garcia. We will sometimes refer to the latter two defendants as petitioners.

failed to file timely responses to the complaint, SMS filed a request to enter their default, and default was duly entered on August 26, 2004.

Petitioners then filed a motion for relief, relying on subdivision (b) of the Code of Civil Procedure section 473, and arguing both "excusable neglect" and the "attorney fault" provision.[2] In support of the motion, Attorney Mark Mellor provided a declaration in which he stated, in pertinent part, "During the time from filing and serving the Complaint and until the date, Plaintiff, SMS SUPERMARKET SERVICE, INC., filed the Request to Enter Default [*sic*]. Serious negotiations were being held to resolve this Action between both clients and counsel. [¶] Counsel for Plaintiff . . . Demitra H. Tolbert, Esq., gave various extensions of time to answer . . . to the undersigned. . . . Ms. Tolbert granted our office an extention [*sic*] of time to respond to the Plaintiff's Complaint until July 22, 2004. [¶] During this period of time and the subsequent period following July 22, 2004, wherein our office requested additional time to confirm the terms of settlement without the need for incurring further costs and fees in preparing a response . . . with the idea that those monies could be better put to use in funding a settlement . . . there were continuing discussions back and forth with counsel . . . . Somewhere in those discussions a miscommunication occurred, in that I was awaiting a response from Ms. Tolbert and simultaneously, Ms. Tolbert was awaiting a response from this office. [¶] The last deadline . . . passed, but, as with all of the others and with my belief that Ms. Tolbert would be getting back to our office shortly . . . our office did not file a response. . . . Because both Parties were in brisk negotiations and several deadlines had passed without any Action [*sic*] by counsel for Plaintiff . . . in the hopes of settlement, I once again let the deadline to answer pass." Counsel then received the request to enter default, and unsuccessfully tried to persuade Ms. Tolbert to have it set aside. Finally, he averred that "Neither the inaction by this office, or the delay in filing a responsive pleading, was due to that [*sic*] of my clients Defendants, SOLV-ALL . . . SCOTT MARINCEK . . . SUSAN MARINCEK . . . and MARTHA GARCIA. . . . If any fault is to be assigned by this Court, it should be places [*sic*] upon this office. . . ."

SMS's response, including a declaration by Attorney Tolbert, disputed the reasonableness of any belief that a further extension would be forthcoming. She also disputed the claim that attorney Mellor had not been warned that entry of default was imminent if no response was received, and provided a copy of a letter to this effect sent well before the default was entered. Ms. Tolbert also gave the opinion that Solv-All had been deliberately dragging its feet to avoid paying a just debt.

---

[2] All subsequent statutory references are to the Code of Civil Procedure unless otherwise specified.

In reply Attorney Mellor amplified upon his earlier declaration and denied receiving (or at least seeing) the warning letter referred to in the preceding paragraph. He expressed surprise that, despite what he described as continuing negotiations, Ms. Tolbert had not *telephoned* him to indicate the urgency of the matter. He stressed that he had been "lulled into a false sense of security;" that this was "my mistake and not that of my clients' [*sic*];" and urged the court to hold "myself solely responsible and at fault. . . ."

The trial court denied the motion for relief. Its expressed reason was that "counsel was aware of the deadline and apparently just let it slip by and there is no indication of—that meets the exception for excusable neglect. [¶] The decision not to answer appears to have been a conscious one to save money rather than a result of negligence, excusable or otherwise."

Solv-All and Martha Garcia petitioned for extraordinary relief. They argue that their showing of "attorney fault" was sufficient and that relief was mandatory under the provisions of section 473, subdivision (b). We agree.

## DISCUSSION[3]

■  We will first briefly consider the argument (briefly made by petitioner) that it was entitled to relief under the *purely discretionary* provisions of section 473. Such relief depends upon the existence of "mistake, inadvertence, surprise, or excusable neglect." The common requirement is that the error must have been *excusable*. (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 258 [121 Cal.Rptr.2d 187, 47 P.3d 1056].)  **(2)**  The standard is whether " 'a reasonably prudent person under the same or similar circumstances' might have made the same error." (*Bettencourt v. Los Rios Community College Dist.* (1986) 42 Cal.3d 270, 276 [228 Cal.Rptr. 190, 721 P.2d 71].) In determining whether to grant relief under this provision, the court is vested with broad discretion (*Elston v. City of Turlock* (1985) 38 Cal.3d 227, 233 [211 Cal.Rptr. 416, 695 P.2d 713]), and its factual findings are entitled to deference. (*H.D. Arnaiz, Ltd. v. County of San Joaquin* (2002) 96 Cal.App.4th 1357, 1368 [118 Cal.Rptr.2d 71].)  ■  It has been repeatedly noted that a decision should only be held to be an abuse of discretion if it "exceed[s] the bounds of reason." (*Shamblin v. Brattain* (1988) 44 Cal.3d

---

[3] Attorney Tolbert attached a supplemental declaration to SMS's return, in which she made certain assertions about petitioner's allegedly uncooperative conduct *after* the hearing. Because we are reviewing the ruling made by the trial court on the record before it, we grant petitioner's motion to strike the declaration.

Petitioner also objects to the statement in the return that Attorney Tolbert told Attorney Mellor in telephone conversations on August 5, 2004, that her client would move for entry of default if Solv-All did not timely respond. No such assertion was made in the declaration she filed in the trial court. We therefore also disregard these statements.

474, 478 [243 Cal.Rptr. 902, 749 P.2d 339]; see *Sanchez v. City of Los Angeles* (2003) 109 Cal.App.4th 1262, 1271 [135 Cal.Rptr.2d 869].)

Under this standard, it cannot reasonably be contended that the trial court erred in finding that Attorney Mellor did not act out of *excusable* neglect. There was credible evidence that he was aware that real party intended—or at least threatened—to take Solv-All's default if the answer was not filed by the expiration of the last agreed extension. Although Attorney Mellor denied receiving the letter to this effect, the trial court was not obliged to believe him. A reasonable attorney aware of the explicit threat would not assume that it would not be carried out, and certainly the trial court did not abuse its discretion in so finding. Petitioner is not entitled to relief on this basis.

■ We move on to the main issue presented by this case: the scope of the "mandatory relief" provisions. Section 473, subdivision (b) also provides for relief if an application "is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect . . . unless the court finds that the default . . . was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." If the statutory conditions are satisfied, the court *must* grant relief; the statute is *mandatory* in this regard. (*Metropolitan Service Corp. v. Casa de Palms, Ltd.* (1995) 31 Cal.App.4th 1481, 1487 [37 Cal.Rptr.2d 575].)[4] The question before us is whether the conditions were satisfied.

The heart of SMS's argument is that the affidavits submitted by Attorney Mellor were insufficient because they did not plainly and unequivocally admit *fault*. It is conceded that petitioners' motion sought relief on the alternate grounds of excusable mistake and attorney fault. (Cf. *Luri v. Greenwald* (2003) 107 Cal.App.4th 1119, 1124–1125 [132 Cal.Rptr.2d 680] (*Luri*), rejecting a contention that relief under the mandatory provisions should be granted whenever the attorney's declaration "suggests" fault, even if the motion is framed solely in terms of "excusable neglect.")[5] Although in his

---

[4] In the trial court, real party argued that the trial court retained discretion to deny the motion even if the facial requirements of the statute were met. However, the cases it cited for this purported principle involved efforts to expand the scope of mandatory relief beyond the circumstances of default and default judgment to which the statute is expressly limited. (See, e.g., *Wiz Technology, Inc. v. Coopers & Lybrand* (2003) 106 Cal.App.4th 1, 17 [130 Cal.Rptr.2d 263].) Presumably recognizing the distinction, SMS does not now contest the essentially mandatory nature of the "attorney-fault" provision.

[5] *Luri* notes that the relief sought is to be specified in the notice of motion. (Cal. Rules of Court, rule 311(a).) Here, petitioners' notice of motion referred generally to "attorney mistake, inadvertence, surprise and/or neglect" without specifying whether the neglect is claimed to have been excusable or not. The points and authorities, and Mellor's declaration, clearly

second declaration Attorney Mellor more unambivalently falls on his sword, even his first declaration explicitly absolves petitioners, his clients, from any responsibility for the failure to answer.

It is true that Mellor admits that the failure to answer was not accidental or inadvertent, but was the calculated result of his mistaken suppositions. SMS argues, and the trial court below agreed, that a *deliberate action* by counsel cannot constitute "mistake, inadvertence, surprise, or neglect" and that relief was therefore inappropriate.[6] After examining and considering the purposes behind the "attorney fault" provisions, we are compelled to disagree.

The "attorney fault" language was added to section 473 in 1988. Prior to that time, a litigant who suffered a default or default judgment due to inexcusable attorney error could only obtain relief if he or she could persuade the court that counsel's behavior amounted to "total abandonment" of the client; otherwise attorney conduct that was "simply inexcusable" fell between the two poles and provided no basis for relief. (See *County of San Diego v. Department of Health Services* (1991) 1 Cal.App.4th 656, 664–665 [2 Cal.Rptr.2d 256].) The amendments were clearly designed to fill this gap. The purpose was threefold: to relieve the innocent client of the consequences of the attorney's fault; to place the burden on counsel;[7] and to discourage additional litigation in the form of malpractice actions by the defaulted client against the errant attorney. (*Metropolitan Service Corp. v. Casa de Palms, Ltd.*, *supra*, 31 Cal.App.4th at p. 1487; accord, *Hu v. Fang* (2002) 104 Cal.App.4th 61, 64 [127 Cal.Rptr.2d 756].)

■ In further construing the language of the statute, of course, we should attempt " 'to effectuate the law's purpose.' " (*Lorenz v. Commercial Acceptance*

---

reference the "attorney fault" provisions. Any defect in the notice was cured by the incorporation of the related papers. (*Carrasco v. Craft* (1985) 164 Cal.App.3d 796, 808 [210 Cal.Rptr. 599].)

[6] Mellor attributes his failure to prepare an answer to his belief that an extension of time would be (or even had been) granted by SMS's counsel. SMS suggests—and not without circumstantial support—that the delay was simply bad faith foot-dragging. However, we repeat that there is no evidence that Solv-All's principals were aware of any such strategy.

It may also be pointed out that such foot-dragging, in the context of a failure to answer, is likely to result in a default judgment and that this would not usually be considered an effective delaying strategy! "On the face of it, allowing a default to be taken against defendants is not a rational device by which to hinder and delay the plaintiff." (*Metropolitan Service Corp. v. Casa de Palms, Ltd.*, *supra*, 31 Cal.App.4th at p. 1488.)

[7] The court *must* order counsel to pay reasonable compensatory legal fees and costs to the other side, and *may* order additional penalties of up to $1,000. (§ 473, subds. (b) and (c).)

*Ins. Co.* (1995) 40 Cal.App.4th 981, 990 [47 Cal.Rptr.2d 362].) In our view, doing so requires that "mistake, inadvertence, surprise, or neglect" be broadly defined.

■ Although in our body of law the term "negligence" implies a careless, but unintentional, failure to act with due care, the word "neglect" is less limited. A child or dog, for example, may be *intentionally* "neglected." A leading dictionary offers definitions of "neglect" that cover both inadvertent and deliberate acts or omissions: "to fail to attend to sufficiently or properly . . . ; to carelessly omit doing (something that should be done) . . . leave undone or unattended to through carelessness *or intention*." (Webster's 3d New Internat. Dict. (1993) p. 1513, italics added.) It is the latter portion of the second definition which most effectively carries out the legislative purpose in enacting the "attorney fault" provisions. From the client's point of view, it doesn't matter a whit whether the default was due to gross carelessness or bad strategy; either way, the client is the one stuck with the judgment resulting from the attorney's error. In both cases, it is the attorney's "neglect" to carry out his duty to his client that causes the problem. In both cases, the client should be entitled to relief if the attorney admits that the inaction was his responsibility.

■ We acknowledge that certain authorities appear to weigh against this result, but we find them distinguishable. It must be stressed that Attorney Mellor unequivocally declared that petitioners had no part in any conscious decision not to file a timely answer, and this was *unrefuted*. Certainly if the client is involved in misconduct or neglect, the statutory condition that the default must be "caused" by attorney neglect is not satisfied. But that is not the situation here, and cases in which the courts refuse to grant relief based on the client's personal responsibility are not controlling. For example, in *Todd v. Thrifty Corp.* (1995) 34 Cal.App.4th 986, 990–992 [40 Cal.Rptr.2d 727], the attorney blamed plaintiff's failure to respond to discovery on his own failure to " 'provide a level of counsel and support . . . that I would expect to receive if I were a client.' " He also blamed his own failure to track the time limits. However, on adequate evidence, the court found that it was the *client* who was factually responsible; although her ill health and other unexplained "personal problems" might have contributed to the lack of response, there was no basis for relief under the "attorney fault" provisions. Less sympathetic is the losing party in *Johnson v. Pratt & Whitney Canada, Inc.* (1994) 28 Cal.App.4th 613, 622–623 [34 Cal.Rptr.2d 26], who also suffered a default as a discovery sanction, but who was found to be deeply "implicated" in the unsatisfactory responses, which included covering up the existence of documents. Pointing out that relief is only required if the default

is "caused" by the attorney, the court upheld a denial of relief because the *client* was primarily responsible.[8]

But these cases only deny relief because the client is not "totally innocent of any wrongdoing." (*Lang v. Hochman* (2000) 77 Cal.App.4th 1225, 1248 [92 Cal.Rptr.2d 322], a case factually similar to *Johnson v. Pratt & Whitney Canada, Inc., supra*, 28 Cal.App.4th 613.) As we have noted, *ante*, there is *no evidence* that petitioners were aware of counsel's decision to delay filing an answer, or that they suggested or agreed that he should do so. Thus, on the record before us, they do not share responsibility for the delay.[9]

SMS, however, relies further on a case which denies relief not due to client involvement, but the fact that counsel made a "strategic decision," and to that extent does conflict with our interpretation of the statute as set out, *ante*. In *State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600 [109 Cal.Rptr.2d 256] (*State Farm*), an insurer filed an action in interpleader against its insured and other parties potentially interested in the proceeds of a fire insurance policy. The insured sued his insurer in federal court on various contract and tort theories. After the interpleader action was settled and dismissed, the insurer moved in federal court to dismiss *that* action on the basis that the insured's claims should have been determined in the state interpleader case. The insured then sought relief under section 473 from the dismissal of the state court case.

His attorney explained that he had read section 386, subdivision (d) (the interpleader statute) as permitting a *separate* action on affirmative claims against the insurer, and for that reason did not file a cross-complaint. With respect to mandatory relief, the appellate court commented that this lacked the "indispensable admission by counsel" regarding his "mistake, inadvertence, surprise, or neglect." It noted that counsel continued to assert that his interpretation of section 386 was correct, and held that "[a]bsent a straightforward admission of fault . . . [defendant] cannot obtain relief under the mandatory provision of section 473." (*State Farm, supra*, 90 Cal.App.4th at pp. 608–610.)

---

[8] See also *Cisneros v. Vueve* (1995) 37 Cal.App.4th 906 [44 Cal.Rptr.2d 682], in which the client allowed the time to answer to pass *before* hiring an attorney; the attorney's subsequent neglect in allowing judgment to be entered did not justify vacating the default, for which he was not responsible.

[9] And note too that other cases *do* allow relief where the client's *mistake* contributed to the default, distinguishing cases like *Johnson v. Pratt & Whitney Canada, Inc., supra*, 28 Cal.App.4th 613, as involving the client's *intentional* misconduct. These cases only require that the attorney error be "a" cause of the default, not the only cause. (E.g., *Benedict v. Danner Press* (2001) 87 Cal.App.4th 923, 928–930 [104 Cal.Rptr.2d 896].)

Undeniably this supports SMS's position. However, we find it to some extent distinguishable; to the extent that it is not, we respectfully disagree.[10]

Significantly, the *second* prong of the insured/defendant's motion in *State Farm* was a request for relief under the *discretionary* provisions. This was, of course, dependent on a showing of *excusable* neglect. On this point, the Court of Appeal *agreed* that section 386 was at least ambiguous and that counsel's interpretation was a "reasonable" mistake of law; thus, relief should have been granted. (*State Farm, supra,* 90 Cal.App.4th at pp. 610–615.)

It is therefore apparent that the court's narrow interpretation of the "attorney-fault" language did not, in that case, preclude relief; arguably it was not even essential to the holding. However, insofar as it reflects a holding of the court, we cannot agree.

In addition to apparently declining relief for a deliberate tactical choice, the court in *State Farm* in essence required *counsel* to determine whether his mistake was excusable or not. The language we have quoted, if strictly applied, would preclude relief if counsel decided that his mistake was one a reasonable attorney could have made. If the court disagrees with him, he cannot then ask that his client be granted "attorney-fault" relief because he does not confess error. We would point out that an attorney whose error or omission has led to a default has already established the imperfection of his judgment and/or legal acumen. It seems harsh, therefore, to place him then between the Scylla of "it was excusable" and the Charybdis of "I was an idiot," especially as it will be the *client* who suffers if he is again wrong.

■ We recognize that in *State Farm*, counsel did not word his declaration in the alternative with respect to his legal interpretation of section 386; the Court of Appeal therefore decided only that without *any* confession of fault, relief was unavailable. We agree that counsel who seeks relief alternatively under the "excusable" and "attorney fault" provisions should at least acknowledge the possibility that his "excusable" mistake, neglect, or decision might be determined to have been completely "inexcusable" by the court. However, if counsel does so, and confirms that any act or omission, careless or deliberate, which led to the entry of the default was done without the client's knowing participation, we hold that relief under the mandatory provisions of section 473 is required.[11]

---

[10] Other cases also suggest in dicta that a "strategic decision" or "deliberate tactic" would not or might not justify relief. (E.g., *Avila v. Chua* (1997) 57 Cal.App.4th 860, 869 [67 Cal.Rptr.2d 373].) Again, we disagree.

[11] Subject, of course, to the trial court's contrary resolution of facts if the record contains conflicting evidence.

The petition for writ of mandate is granted. The trial court is directed to vacate its order denying relief, and to hold new proceedings at which 1) an order granting relief shall be entered, and 2) the parties may argue the issue of sanctions and compensatory expenses.

Petitioners to recover their costs.

Gaut, J., and King, J., concurred.