Filed 3/18/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| EILEEN TALBOTT, | B329889 |
| Cross-complainant and Respondent, | (Los Angeles County Super. Ct. No. 20LBCV00201) |
| v. | |
| KAMRAN GHADIMI et al., | |
| Cross-defendants and Appellants. | |
| ——————————————— | |
| EILEEN TALBOTT, | B331375 |
| Cross-complainant and Appellant, | |
| v. | |
| KAMRAN GHADIMI et al., | |
| Cross-defendants and Respondents. | |

APPEALS from a judgment and an order of the Superior Court of Los Angeles County, Mark C. Kim, Judge. Reversed with directions.

BWA Law Group, Jeremy J. Alberts, J. Michael Echevarria and Randell Y. Hong for Cross-complainant and Appellant Eileen Talbott.

Bordin Semmer, Joshua Bordin-Wosk, and Christopher Blanchard for Cross-defendants and Appellants Kamran Ghadimi and Advanced Pain Treatment Medical Center.

_____

**INTRODUCTION**

After Kamran Ghadimi, M.D., backed out of an alleged oral agreement to settle Ghadimi's collection action against his former patient, Eileen Talbott, Talbott filed a cross-complaint for breach of contract to enforce the oral settlement agreement. Ghadimi missed the deadline to respond to the cross-complaint, and the trial court entered his default. Ghadimi filed a motion to set aside the default under the mandatory relief provision of Code of Civil Procedure, section 473, subdivision (b).[1] The trial court denied the motion, finding the default was caused by a calculated litigation strategy, not by neglect or mistake by Ghadimi's lawyers.

We conclude Ghadimi was entitled to relief under the mandatory provision of section 473, subdivision (b). In doing so, we follow *Solv-All v. Superior Court* (2005) 131 Cal.App.4th 1003, 1008 (*Solv-All*), where the court held a defendant may be entitled

_____

[1]    Statutory references are to the Code of Civil Procedure.

2

to relief under the mandatory provision of section 473, subdivision (b), even where the attorney makes a bad strategic decision, rather than *Jerry's Shell v. Equilon Enterprises, LLC* (2005) 134 Cal.App.4th 1058 (*Jerry's Shell*), where the court held such relief may not be available in that situation. Therefore, we reverse the judgment and the postjudgment order granting Talbott's motion for attorneys' fees.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Ghadimi Backs Out of a Settlement, and Talbott Files a Cross-complaint To Enforce It*

In 2020 Ghadimi filed this action against Talbott to collect $87,230 in unpaid medical bills ($12,230 in physician fees and $75,000 in facility fees). In September 2022 counsel for the parties engaged in settlement negotiations via email. On September 8, 2022 counsel for Talbott stated, "[W]e can settle at $9,500 and a waiver of sanctions against everyone," and asked counsel for Ghadimi to send "a draft settlement." (The trial court had ordered Ghadimi to pay monetary sanctions to Talbott.) On September 12, 2022 counsel for Ghadimi sent an email to counsel for Talbott stating: "Just received authorization for the $9,500 settlement + waiver." On September 16, 2022 counsel for Ghadimi sent a draft settlement agreement. On September 19, 2022 counsel for Talbott responded by stating "the settlement agreement is acceptable" and asking counsel for Ghadimi to send a final version, to which counsel for Ghadimi replied: "Sounds good, will do."

On September 23, 2022 counsel for Ghadimi sent an email to counsel for Talbott stating: "The saga unfortunately continues.

3

Dr. Ghadimi is no longer interested in settling this matter for $9,500. We have informed him of the repercussions of this decision, including that the court may enforce the agreement, and that your office is unwilling to stipulate to continue the current trial date." Counsel for Talbott responded: "Please be advised that this office shall exhaust all appropriate legal remedies to enforce the settlement agreement that your office drafted and we accepted."

Talbott filed a motion for leave to file a cross-complaint for breach of the settlement agreement. In the motion Talbott stated she planned to file a verified cross-complaint to enforce the settlement, followed by a motion for judgment on the pleadings based on the admissions in Ghadimi's answer. Ghadimi opposed the motion. He argued that, when he agreed to settle for $9,500, he relied on his lawyer's incorrect statement that Talbott's total bill was $18,662, when the correct amount was $133,462 ($18,662 in physician fees plus $114,800 in facility fees).

The trial court granted Talbott's motion for leave to file the cross-complaint, and Talbott served the cross-complaint the next day. She sought an order requiring Ghadimi to dismiss the action with prejudice after Talbott paid him $9,500. She also sought attorneys' fees under a provision in the unsigned settlement agreement.

B.  *The Trial Court Enters Ghadimi's Default on Talbott's Cross-complaint*

On December 19, 2022, the day before Ghadimi's response to the cross-complaint was due, counsel for Ghadimi asked counsel for Talbott for a three-week extension to file a responsive pleading. Counsel for Talbott refused, citing the "impending trial

4

date" of January 23, 2023. On December 19, 2022 counsel for Ghadimi sent counsel for Talbott a meet and confer letter stating Ghadimi intended to file a demurrer to the cross-complaint on the grounds that Ghadimi did not consent to the settlement agreement and that the agreement was unconscionable. Counsel for Talbott responded that section 430.41, subdivision (a), required a demurring party to meet and confer at least five days before the response date and that the deadline for Ghadimi to meet and confer had passed.

On December 20, 2022 counsel for Ghadimi, Christoffer Gaddini, filed a declaration under section 430.41 asking for a 30-day extension to file a demurrer to the cross-complaint.[2] Gaddini stated that he called counsel for Talbott's office on November 18, 2022 to meet and confer, but that he "was told that the handling attorney was not available." Gaddini said he later "again attempted to call [opposing] counsel's office to no avail." Gaddini stated that on December 19, 2022 he asked counsel for Talbott for a three-week extension to respond to the cross-complaint and explained the grounds for Ghadimi's planned demurrer, but that counsel for Talbott was unwilling to provide

---

[2] Section 430.41, subdivision (a)(2), provides in relevant part: "The parties shall meet and confer at least 5 days before the date the responsive pleading is due. If the parties are not able to meet and confer at least 5 days before the date the responsive pleading is due, the demurring party shall be granted an automatic 30-day extension of time within which to file a responsive pleading, by filing and serving, on or before the date on which a demurrer would be due, a declaration stating under penalty of perjury that a good faith attempt to meet and confer was made and explaining the reasons why the parties could not meet and confer."

5

an extension or meet and confer.  Gaddini said that, because the parties had not been able to meet and confer at least five days before the responsive pleading was due, Ghadimi was entitled under section 430.41, subdivision (a)(2), to an "automatic 30-day extension of time within which to file a responsive pleading."

On December 21, 2022 counsel for Talbott filed a request for entry of default, but the trial court rejected it.  On December 28, 2022 Talbott filed another request for entry of default, and this time the court entered Ghadimi's default.  On January 6, 2023 Ghadimi tried to file a general denial to the cross-complaint, but the clerk rejected it because default had been entered.

Most reasonable attorneys, at this point in the proceedings, would have been able to work out the default issue.  That didn't happen here.  Counsel for Ghadimi asked counsel for Talbott to stipulate to set aside the default, and counsel for Talbott originally agreed to stipulate to set aside the default if Ghadimi sent a proposed answer to the cross-complaint.  Counsel for Ghadimi, however, sent an unverified answer.  One of the attorneys for Talbott, J. Michael Echevarria, responded: "I sometimes wonder if your law firm has ever practiced litigation in California or if your tactics are solely designed to cause delay. Ms. Talbott filed a VERIFIED cross-complaint for a reason: it requires a VERIFIED Answer in which each and every allegation is admitted or denied. . . .  [¶]  . . .  This is something any first year attorney knows. . . .  I suggest you withdraw your General Denial and immediately file a Verified Answer so that we do not have to delay things further by filing an unnecessary motion to strike.  This, of course, presumes that your office will act in good

6

faith, something that appears to be a rare commodity in your office.  You people continue to amaze me."[3]

Counsel for Ghadimi sent a verified answer, and Echevarria responded:  "The Answer is acceptable and should be attached as an exhibit to the stipulation to set aside the default.  Send me the stipulation and I will sign it."  Apparently counsel for Ghadimi never sent a stipulation to set aside the default.

---

[3]     Although Echevarria may have been frustrated with opposing counsel, his personal attacks were unprofessional and violated the California Attorney Guidelines of Civility and Professionalism, including the requirement that, in communicating with adversaries, an "attorney should avoid hostile, demeaning or humiliating words."  (California Attorney Guidelines of Civility and Professionalism (2007) Section 4(f), p. 4, <https://www.calbar.ca.gov/Portals/0/documents/ethics /Civility/Atty-Civility-Guide-Revised_Sept-2014.pdf> [as of Mar. 17, 2025], archived at <https://perma.cc/2DP8-SCM5>; see *Hansen v. Volkov* (2023) 96 Cal.App.5th 94, 107 ["'our system of justice simply cannot function fairly and reliably with systemic incivility"]; *Karton v. Ari Design & Construction, Inc.* (2021) 61 Cal.App.5th 734, 747 ["civility in litigation tends to be efficient by allowing disputants to focus on core disagreements and to minimize tangential distractions"]; *In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1537 ["Zeal and vigor in the representation of clients are commendable.  So are civility, courtesy, and cooperation.  They are not mutually exclusive."].)  Likewise, in their brief on appeal, counsel for Talbott engage in inappropriate "[a]d hominem attacks and other invective" that "detract from counsel's legal arguments, signal inappropriate personal embroilment in the dispute, and indicate an inability to engage in the reasoned analysis the courts need and counsel's clients deserve." (*WasteXperts, Inc. v. Arakelian Enterprises, Inc.* (2024) 103 Cal.App.5th 652, 667.)

On January 13, 2023 Ghadimi filed an ex parte application to continue trial (which, as stated, was scheduled for January 23, 2023) to allow time to take depositions and file dispositive motions on Talbott's cross-complaint. The trial court denied the application. At the final status conference on January 19, 2023 the trial court scheduled a default prove-up hearing for January 23, 2023, to occur before trial.

C.    *Ghadimi Files a Motion To Set Aside the Default, Which the Trial Court Denies*

On January 20, 2023 Ghadimi filed a motion to set aside the default. Ghadimi argued he was entitled to mandatory relief under section 473, subdivision (b), because his failure to file a responsive pleading was the result of "counsel's mistake, inadvertence, surprise, or neglect." The trial court continued the trial to allow time to hear the motion to set aside the default. Ghadimi submitted the declaration of one of his attorneys, Joshua Bordin-Wosk, who stated that he and his colleague, Gaddini, believed Gaddini's declaration would extend the deadline to respond to Talbott's cross-complaint by 30 days and that, when Bordin-Wosk and Gaddini learned Ghadimi was in default, they asked opposing counsel to stipulate to set aside the default, which opposing counsel agreed to do.[4] Bordin-Wosk stated the court entered Ghadimi's default as a result of counsel's

---

[4]    It is not clear from the record why the parties did not stipulate to set aside the default. As discussed, counsel for Talbott claimed he agreed to stipulate, but counsel for Ghadimi never sent a stipulation, and counsel for Talbott opposed the motion to set aside the default.

8

"mistake, inadvertence and neglect" and "not due to any conduct or neglect of" Ghadimi.

Although Talbott's lawyer, Echevarria, had agreed to stipulate to set aside the default, Talbott opposed the motion. Accusing counsel for Ghadimi of "threatening frivolous motions, filing perjured declarations, and dealing in all manner of chicanery," Talbott argued the default was caused by counsel for Ghadimi's "conscious strategic choices to delay, hinder and frustrate justice," not by mistake, inadvertence, surprise or neglect. Talbott argued the actions of counsel for Ghadimi were a strategy to prevent Talbott from filing a motion for judgment on the pleadings on the cross-complaint before the trial date. Talbott asserted counsel for Ghadimi's claim he called opposing counsel's office on November 18, 2022 to meet and confer was "simply a bald-faced lie." Echevarria stated in his declaration: "In all my years of practice I do not believe I have ever encountered a more deceitful and evasive set of attorneys. . . ."[5]

The trial court denied the motion to set aside the default. The court ruled Gaddini's declaration seeking a 30-day extension

_____

[5] As the court stated in *Karton v. Ari Design & Construction, Inc.* (2021) 61 Cal.App.5th 734: "Incivility can rankle relations and thereby increase the friction, extent, and cost of litigation. Calling opposing counsel a liar, for instance, can invite destructive reciprocity and generate needless controversies. Seasoning a disagreement with avoidable irritants can turn a minor conflict into a costly and protracted war. All those human hours, which could have been put to socially productive uses, instead are devoted to the unnecessary war and are lost forever. All sides lose, as does the justice system, which must supervise the hostilities." (*Id.* at p. 747.)

under section 430.41 was "not timely filed."[6] The court stated Talbott provided evidence (1) Ghadimi knew Talbott planned to move for judgment on the pleadings, "obviating the need for a trial"; (2) Ghadimi knew the cross-complaint would survive a demurrer;[7] (3) Ghadimi "never truly intended to file a demurrer"; and (4) Gaddini lied when he said he "attempted to meet and confer prior to filing the declaration seeking an extension of time." The court stated Talbott's evidence established "the decision not to file a timely answer and instead to file a declaration re: extension of time was a litigation strategy, not a mistake or the result of neglect." The court stated Ghadimi's

---

[6] The trial court did not explain why Gaddini's declaration, which was filed "on or before the date on which a demurrer would be due" (§ 430.41, subd. (a)(2)), was not timely.

[7] The court stated Ghadimi "knew the cross-complaint would survive demurrer, because the Court's ruling on [Talbott's] motion for leave to file the cross-complaint addressed and rejected [Ghadimi's] contention that the proposed cross-complaint failed to state a cause of action." However, the trial court's order granting the motion for leave to file a cross-complaint did not address whether the cross-complaint stated a cause of action. In any event, a party that unsuccessfully opposes a motion for leave to file an amended complaint or cross-complaint has the right to demur to the new pleading after it is filed. (See § 432.10 ["A party served with a cross-complaint may within 30 days after service move, demur, or otherwise plead to the cross-complaint in the same manner as to an original complaint."]; *White Lighting Co. v. Wolfson* (1968) 68 Cal.2d 336, 353 [party may attack the sufficiency of a cross-complaint by demurrer].)

10

reply brief "address[ed] absolutely none of" Talbott's evidence and found Bordin-Wosk's affidavit of fault was "not credible."[8]

### D. *The Trial Court Enters a Default Judgment Against Ghadimi and Awards Talbott Attorneys' Fees*

On March 2, 2023 the court held a default prove-up hearing. On March 7, 2023 the court entered a default judgment and ordered specific performance of the oral settlement agreement. Ghadimi timely appealed from the judgment.

Talbott filed a motion seeking $106,398 to $149,320 (!) in attorneys' fees based on an attorneys' fees provision in the unsigned settlement agreement. The trial court found that amount "inflated and objectively unreasonable" and awarded $5,425 in attorneys' fees. Talbott timely appealed from the order awarding attorneys' fees; Ghadimi did not. On May 16, 2023 the trial court entered an amended judgment that included the $5,425 in attorneys' fees. Neither side appealed from the amended judgment.

## DISCUSSION

### A. *Applicable Law and Standard of Review*

"Section 473, subdivision (b), authorizes the trial court to relieve a party from a default judgment entered because of the

---

[8] After the trial court issued a tentative ruling denying the motion to set aside the default, Gaddini filed a supplemental declaration explaining why he decided to file an answer rather than a demurrer to Talbott's cross-complaint. At the hearing the trial court stated it would not consider the supplemental declaration.

11

party's or his or her attorney's mistake, inadvertence, surprise, or neglect.  The section provides for both mandatory and discretionary relief."  (*Carmel, Ltd. v. Tavoussi* (2009) 175 Cal.App.4th 393, 399; accord, *County of San Bernardino v. Mancini* (2022) 83 Cal.App.5th 1095, 1102.)  Mandatory relief is available "whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, . . . unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect."  (§ 473, subd. (b).)  "'"[T]he provisions of section 473 . . . are to be liberally construed and sound policy favors the determination of actions on their merits."'"  (*Maynard v. Brandon* (2005) 36 Cal.4th 364, 371; see *People v. The North River Ins. Co.* (2011) 200 Cal.App.4th 712, 718.)  "'[B]ecause the law strongly favors trial and disposition on the merits, any doubts in applying section 473 must be resolved in favor of the party seeking relief from default.'"  (*Maynard*, at pp. 371-372; see *North River Ins. Co.*, at p. 718.)

"'[I]f the prerequisites for the application of the mandatory provision of section 473, subdivision (b) exist, the trial court does not have discretion to refuse relief.'"  (*Carmel, Ltd. v. Tavoussi*, *supra*, 175 Cal.App.4th at p. 399; see *Solv-All*, *supra*, 131 Cal.App.4th at p. 1008 ["[i]f the statutory conditions are satisfied, the court *must* grant relief"].)  "Thus, to the extent that the applicability of the mandatory relief provision does not turn on disputed facts, but rather, presents a pure question of law, it is subject to de novo review.  [Citation.]  Where the facts are in dispute as to whether or not the prerequisites of the mandatory

12

relief provision of section 473, subdivision (b), have been met, we review the record to determine whether substantial evidence supports the trial court's findings." (*Carmel*, at p. 399; see *Martin Potts & Associates, Inc. v. Corsair, LLC* (2016) 244 Cal.App.4th 432, 437.)

B.  *The Trial Court Erred in Denying Ghadimi's Motion To Set Aside the Default*

We assume substantial evidence supported the trial court's findings that counsel for Ghadimi's conduct was strategic. Nevertheless, Ghadimi was still entitled to relief under section 473, subdivision (b), because the default was caused by his lawyers' conduct, not Ghadimi's.  The mandatory relief provision of section 473, subdivision (b), serves three purposes: "to relieve the innocent client of the consequences of the attorney's fault; to place the burden on counsel; and to discourage additional litigation in the form of malpractice actions by the defaulted client against the errant attorney." (*Solv-All*, *supra*, 131 Cal.App.4th at p. 1009, fn. omitted; see *McClain v. Kissler* (2019) 39 Cal.App.5th 399, 428.)  Construing section 473 ""'to effectuate the law's purpose'"" requires "that 'mistake, inadvertence, surprise, or neglect' be broadly defined." (*Solv-All*, at pp. 1009-1010.)  As the court in *Solv-All* explained:  "From the client's point of view, it doesn't matter a whit whether the default was due to gross carelessness or bad strategy; either way, the client is the one stuck with the judgment resulting from the attorney's error.  In both cases, it is the attorney's 'neglect' to carry out his duty to his client that causes the problem.  In both cases, the client should be entitled to relief if the attorney admits that the inaction was his responsibility." (*Id.* at p. 1010.)

13

However, "if the client is involved in misconduct or neglect, the statutory condition that the default must be 'caused' by attorney neglect is not satisfied." (*Ibid.*; see *Carmel, Ltd. v. Tavoussi*, *supra*, 175 Cal.App.4th at p. 400 ["If the trial court finds that the moving party's misconduct was a contributing cause of the default, that party 'cannot rely on the mandatory relief provision of section 473.'"].)

In *Solv-All* the defendant's lawyer submitted a declaration stating that he was engaged in "brisk negotiations" to settle the case, that opposing counsel previously had given extensions of time, and that, "'in the hopes of settlement, [he] once again let the deadline to answer pass.'" (*Solv-All*, *supra*, 131 Cal.App.4th at p. 1006.) The lawyer also said the failure to answer was his fault and not his clients' fault. (*Ibid.*) The plaintiff opposed the motion to set aside the default, arguing that it was unreasonable for counsel for the defendant to believe "a further extension would be forthcoming," that counsel for the plaintiff warned counsel for the defendant she would seek entry of default if the defendant did not respond to the complaint, and that the defendant "had been deliberately dragging its feet to avoid paying a just debt." (*Ibid.*) The trial court denied the defendant's motion under section 473, subdivision (b), stating the lawyer's "'decision not to answer appears to have been a conscious one to save money rather than a result of negligence, excusable or otherwise.'" (*Solv-All*, at p. 1007.) On appeal the plaintiff argued "a *deliberate action* by counsel cannot constitute 'mistake, inadvertence, surprise, or neglect.'" (*Id.* at p. 1009.) The court in *Solv-All* disagreed, holding that, if counsel for the defaulting party "confirms that any act or omission, careless or deliberate, which led to the entry of the default was done without the client's

14

knowing participation, . . . relief under the mandatory provisions of section 473 is required." (*Id.* at p. 1012.)

Like the defendant in *Solv-All*, Ghadimi was entitled to relief under the mandatory provision of section 473, subdivision (b), because he did not participate in his lawyers' purported "bad strategy" (*Solv-All*, *supra*, 131 Cal.App.4th at p. 1010) to delay answering Talbott's cross-complaint. In his declaration Bordin-Wosk took responsibility for not filing a timely answer to the cross-complaint and stated the default was not caused by his clients. Although the trial court found other parts of Bordin-Wosk's declaration not credible, the court did not find Ghadimi was involved in his lawyers' failure to timely respond to the cross-complaint or the lawyers' strategy of delay.[9] Because Ghadimi's default was caused by his lawyers' conduct, section 473, subdivision (b), protected Ghadimi from being "stuck with the judgment resulting from the attorney's error." (*Solv-All,* at p. 1010.)

---

[9] In her respondent's brief Talbott suggests Ghadimi was not "without fault here." Talbott, however, forfeited that argument by not raising it in the trial court, and in any event, there is no evidence to support it. Talbott states that Ghadimi "avoided sitting for his deposition *eight times*" and that Ghadimi's defense to the cross-complaint relied on an alleged miscommunication between Ghadimi and his lawyers about whether to accept Talbott's settlement offer. Although those events may reflect poorly on the conduct of Ghadimi, his lawyers, or both, they shed no light on whether Ghadimi was involved in his lawyers' strategy to avoid answering the cross-complaint. (See *Metropolitan Service Corp. v. Casa de Palms, Ltd.* (1995) 31 Cal.App.4th 1481, 1488 [defendants' "prior resistance does not entitle plaintiff to a default judgment"].)

15

Notwithstanding *Solv-All*, Talbott argues the "unless" clause in section 473 (the court must grant relief "unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect") is a "causation testing device" that requires the trial court to decide whether the lawyer is "telling the truth" about being mistaken. But the two cases Talbott cites—*Milton v. Perceptual Development Corp.* (1997) 53 Cal.App.4th 861 and *Cisneros v. Vueve* (1995) 37 Cal.App.4th 906—addressed whether the lawyer's conduct (rather than the client's) caused the default, not whether the lawyer caused the default intentionally or mistakenly. (See *Milton*, at pp. 867-868 [attorney's admitted misconduct was a proximate cause of the default, even if other lawyers bore "some of the blame," and the clients "were not responsible in whole or in part for the defaults"]; *Cisneros*, at p. 912 [default is "not truly . . . caused by the attorney" where the attorney is "trying to 'cover-up' for the client" or "a neglectful client permits the default to be taken against him before retained counsel enters the scene"]; see also *Todd v. Thrifty Corp.* (1995) 34 Cal.App.4th 986, 992 ["Having attributed the dismissal to plaintiff's personal problems at the first hearing, counsel could not thereafter attempt to change the facts and blame himself."].)

Talbott also argues we should reject *Solv-All* and rely instead on *Jerry's Shell*, *supra*, 134 Cal.App.4th 1058. In *Jerry's Shell* the plaintiffs brought a motion under section 473, subdivision (b), to set aside a dismissal after the trial court awarded terminating sanctions for a lengthy pattern of discovery abuse. The discovery abuse included failing to respond to discovery requests, failing to respond to a meet and confer letter about late responses, failing to oppose the defendant's motion to

16

compel responses, failing to provide responses ordered by a discovery referee, failing to respond to a second motion to compel or to appear at the hearing, and finally serving incomplete responses with general objections prohibited by a discovery order. (*Id.* at pp. 1062-1063.) After the trial court imposed terminating sanctions, the plaintiffs filed a motion to set aside the dismissal under section 473, subdivision (b). (*Jerry's Shell*, at p. 1064.) In her affidavit of attorney fault, counsel for the plaintiffs blamed the default on her medical problems, a colleague who failed to cover for her in her absence, and a law clerk who served the wrong documents. (*Id.* at p. 1065.) In opposition to the motion, the defendant submitted evidence that, in another case, plaintiffs' counsel claimed she suffered the same medical problems but on different dates and that plaintiffs' counsel had been present at hearings on dates she claimed to be hospitalized. (*Id.* at pp. 1065-1066.)

Relying on dicta in *Yeap v. Leake* (1997) 60 Cal.App.4th 591 that relief under section 473, subdivision (b), is not available if an "intentional strategic decision" caused the default or dismissal (*id.* at p. 601), the court in *Jerry's Shell* affirmed an order denying the plaintiff's motion.[10] (*Jerry's Shell*, *supra*, 134 Cal.App.4th at p. 1073.) The court stated: "While calling this practice a 'strategy' is perhaps too generous a term, there is

[10] The issue in *Yeap v. Leake*, *supra*, 60 Cal.App.4th 591 was whether the mandatory relief provision of section 473 applied where, due to negligence of counsel, the plaintiff failed to appear at an arbitration and later failed to timely request a trial de novo after the court entered judgment for the defendant. (See *Yeap*, at p. 594.) There was no contention the plaintiff's lawyer's conduct was deliberate. (*Id.* at p. 602.)

17

no question that it resulted in the attorneys having considerable supplemental time to respond to discovery not available to practitioners who follow the rules, while generally risking nothing more severe than an order compelling responses that should have been provided months earlier or an issue sanction on a topic that might never have been proven at trial. When the ultimate sanction of dismissal inevitably reared its head, appellants' counsel's obvious plan was to claim attorney fault and revive the claims through a section 473(b) motion for relief. If we were to hold that counsel's actions were subject to automatic, mandatory relief, we would be rewarding and encouraging this wholly improper conduct. A party cannot justly be permitted to seek relief under section 473(b) from sanctions imposed for deliberate failure to respond to discovery or oppose discovery motions." (*Id.* at pp. 1073-1074, fn. omitted.) Acknowledging *Solv-All* was "somewhat to the contrary," the court in *Jerry's Shell* distinguished *Solv-All* on the ground the attorney in *Solv-All* "*was* mistaken about whether plaintiff expected a response to the complaint given that settlement discussions were underway, even if his decision not to file an answer can be seen as deliberate or intentional," unlike the lawyer in *Jerry's Shell*, who could "point to no such mistake about the need to respond to discovery or the need to oppose the motion for sanctions." (*Id.* at p. 1074.)[11]

---

[11] Unlike the court in *Jerry's Shell*, the court in *Solv-All* did not rest its decision on whether the lawyer acted in bad faith or merely made a mistake. Indeed, the court in *Solv-All* stated the plaintiff "suggests—and not without circumstantial support— that the delay was simply bad faith foot-dragging. However, we repeat that there is no evidence that [the defendant's] principals

*Jerry's Shell* does not preclude relief from a default caused by a lawyer's strategic decision not to respond to a complaint, as opposed to a dismissal imposed as a sanction for a long, consistent pattern of discovery abuse. When a party seeks relief from a dismissal after a terminating sanction, the court must weigh the goal of the mandatory relief provision of section 473, subdivision (b) (relieving the innocent client of the consequences of the attorney's fault), against the competing goal of ensuring compliance with discovery rules. (See *City of Los Angeles v. PricewaterhouseCoopers, LLP* (2024) 17 Cal.5th 46, 73 ["One of the central purposes of the [Civil Discovery Act], then, was to give courts the tools necessary to respond to those abuses to ensure that civil discovery can serve its central truth-seeking function."].) In *Jerry's Shell* the innocent client's interest yielded to the need to enforce discovery rules.

Here, there is no concern about rewarding or encouraging the kind of discovery abuse that allowed the plaintiffs in *Jerry's Shell* to delay responding to discovery for more than six months. (See *Jerry's Shell, supra*, 134 Cal.App.4th at pp. 1061-1063.) Counsel for Ghadimi's strategy promised to give Ghadimi at most an additional 30 days to respond to Talbott's cross-complaint. Interpreting the mandatory provision of section 473, subdivision (b), to deny Ghadimi relief from default because of his lawyers' potentially misguided strategy to buy an extra 30 days would impose a disproportionate penalty on Ghadimi that is inconsistent with the policies that favor deciding cases on their merits and shielding clients from their lawyers' mistakes, even when their lawyers act in bad faith. (See *Maynard v. Brandon*,

were aware of any such strategy." (*Solv-All, supra,* 131 Cal.App.4th at p. 1009, fn. 6.)

19

*supra*, 36 Cal.4th at p. 371 [policy favors deciding cases on their merits].)

Talbott argues—and apparently the trial court agreed—counsel for Ghadimi's strategy was designed to prevent Talbott from enforcing the settlement agreement by moving for judgment on the pleadings on her cross-complaint before the impending trial date. If that was counsel for Ghadimi's strategy and counsel for Talbott's plan, neither was a good one. (Cf. *Metropolitan Service Corp. v. Casa de Palms, Ltd.* (1995) 31 Cal.App.4th 1481, 1488 ["allowing a default to be taken against defendants is not a rational device by which to hinder and delay the plaintiff"].) Any such strategy by counsel for Ghadimi would not have delayed Talbott's ability to move for judgment on the pleadings by much: Had the court granted Ghadimi's motion to vacate the default and filed Ghadimi's proposed answer, Talbott could have filed a motion for judgment on the pleadings in 10 days. (See §§ 438, subds. (a)(2), (f)(1) [cross-complainant may file motion for judgment on the pleadings after the time to demur to the answer has expired]; 430.40, subd. (b) [cross-complainant may demur to answer within 10 days after service of the answer].) As for counsel for Talbott's plan, once Talbott obtained leave to file her cross-complaint, the case was no longer at issue, and both parties were entitled to take discovery and file dispositive motions on the cross-complaint, which would have required the trial court to continue the trial date, at least on the cross-complaint. (See § 594a [court may "postpone the trial" if "amendment of the pleadings, or the allowance of time to make such amendment, or to plead, renders a postponement necessary"]; *Medford v. Superior Court* (1983) 140 Cal.App.3d 236, 239 [court "may continue the trial date where filing or responding to the cross-

20

complaint necessitates such a continuance"]; California Rules of Court, rule 3.1332(c)(7) [circumstances indicating good cause to continue the trial include "significant, unanticipated change in the status of the case as a result of which the case is not ready for trial"].)[12]

We do not suggest it is acceptable for counsel to make false or misleading statements in declarations submitted to the court,

---

[12] In *Pagarigan v. Aetna U.S. Healthcare of California, Inc.* (2007) 158 Cal.App.4th 38, a case not cited by either party, the trial court dismissed the action after the plaintiffs failed to timely file an amended complaint following an appeal where the reviewing court directed the trial court to give the plaintiffs leave to amend certain causes of action. (*Id.* at pp. 40-41.) The trial court denied the plaintiffs' motion to set aside the dismissal under section 473, subdivision (b), finding the plaintiffs' attorney deliberately failed to timely file an amended complaint because he wanted to stay the case pending resolution of an appeal involving other defendants. (*Pagarigan*, at pp. 44-45.) This court affirmed the order denying the plaintiffs' motion to set aside the dismissal. (*Id.* at p. 39.) Though most of the court's opinion in *Pagarigan* concerned the discretionary provision of section 473, subdivision (b), the court briefly addressed the mandatory provision and stated the plaintiffs were not entitled to relief because the "'mandatory provision only applies narrowly to defaults and dismissals "akin" to defaults'" and because "[d]esigning conduct that leads to a dismissal is not akin to a default." (*Pagarigan*, at pp. 45-46.) The court in *Pagarigan*, however, was concerned with limiting the application of section 473, subdivision (b), to certain kinds of dismissals (i.e., those that are akin to defaults). This case involves a default, not a dismissal; Ghadimi is a cross-defendant in default, not a plaintiff whose case has been dismissed. The limiting language of *Pagarigan* does not apply.

21

nor do we condone any gamesmanship and lack of candor on the part of counsel for Ghadimi. However, under the mandatory provision of section 473, subdivision (b), default is not an appropriate punishment for clients whose lawyers may have engaged in misconduct. And the conduct of counsel for Ghadimi was not without consequences. When the court grants mandatory relief based on an attorney's affidavit of fault, section 473, subdivision (b), requires the court to "direct the attorney to pay reasonable compensatory legal fees and costs to opposing counsel or parties." In addition, the court may impose a penalty up to $1,000, direct the attorney to pay up to $1,000 to the State Bar Client Security Fund, or grant "other relief as is appropriate." (*Id.*, subd. (c)(1).) The trial court here may consider what relief is appropriate.[13]

---

[13] Ghadimi also argues the trial court erred in entering default after Gaddini filed a timely declaration under section 430.41. Talbott does not dispute Gaddini's declaration was timely, but argues Gaddini lied when he said that he tried to meet and confer and that he intended to file a demurrer. Ghadimi is correct that Gaddini filed his declaration on or before the deadline for a responsive pleading, but Ghadimi likely forfeited that argument by not making it in the trial court. (See *Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603; *Colyear v. Rolling Hills Community Assn. of Rancho Palos Verdes* (2017) 9 Cal.App.5th 119, 137, fn. 5.) In any event, the purpose behind the meet-and-confer requirement of section 430.41 is to encourage reasonable lawyers to determine "whether an agreement can be reached that would resolve the objections to be raised in the demurrer." (§ 430.41, subd. (a).) The conduct of the lawyers in this case, unfortunately, was neither reasonable nor designed to reach an agreement.

22

C.     *The Order Awarding Attorneys' Fees Must Be Reversed*

The trial court awarded Talbott $5,425 in attorneys' fees based on an attorneys' fees provision in the unsigned settlement agreement.  Talbott appealed from that order, arguing the court should have awarded more in attorneys' fees.  Because we reverse the judgment on which the award of fees was based, we also reverse the order awarding Talbott fees.  (See *Rose v. County of San Benito* (2022) 77 Cal.App.5th 688, 728 [an "'order awarding costs falls with a reversal of the judgment on which it is based'"]; *Bevis v. Terrace View Partners, LP* (2019) 33 Cal.App.5th 230, 263 [reversing the judgment compels reversing the award of fees and costs to prevailing party based on the judgment].)  Talbott will have an opportunity later to make another request for attorneys' fees, if appropriate.

## DISPOSITION

The judgment is reversed.  The trial court is directed to vacate the default judgment, the order denying Ghadimi's motion to set aside the default, and the order granting Talbott's motion for attorneys' fees.  The court is directed to enter a new order granting Ghadimi's motion to set aside the default and ordering Ghadimi to respond to the cross-complaint within 10 days.  Ghadimi's motion for judicial notice is granted.  Ghadimi is to recover his costs on appeal.


SEGAL, J.


We concur:


MARTINEZ, P. J.


STONE, J.


24